UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

SHAWNIE VEDDER,

       Plaintiff,

v.                           Case No. 2:16-cv-14485-AJT-RSW

CREDIT ACCEPTANCE
CORPORATION,
a Michigan corporation,

       Defendant.

---

| | |
|---|---|
| Sergei Lemberg<br>LEMBERG LAW, LLC<br>Attorneys for Plaintiff Shawnie Vedder<br>43 Danbury Rd, 3rd Floor<br>Wilton, CT 06897<br>(203) 653-2250<br>slemberg@lemberglaw.com | Stephen W. King (P56456)<br>KING AND MURRAY PLLC<br>Attorneys for Defendant Credit<br>Acceptance Corporation<br>355 S. Old Woodward, Suite 100<br>Birmingham, MI 48009<br>(248) 792-2398<br>sking@kingandmurray.com |

---

## CREDIT ACCEPTANCE'S MOTION TO STAY

Defendant Credit Acceptance Corporation ("Credit Acceptance"), by and through counsel, requests a temporary stay until the "Challenge Lawsuit" (currently pending in the D.C. Circuit) is decided. The Challenge Lawsuit seeks to vacate and/or amend the 2015 FCC Order on the issues of potential liability for calls to cell phone numbers and on the definition of an automatic telephone dialing system, both of which are relevant to this case.

In support of its motion, Credit Acceptance relies on the facts and law presented in the attached Memorandum in Support.

There was a conference between counsel in which the movant explained the nature of the motion and its legal basis and requested but did not obtain concurrence in the relief sought.

Respectfully submitted,

/s/ Stephen W. King
Stephen W. King (P56456)
KING AND MURRAY PLLC
Attorneys for Credit Acceptance
Corporation
355 S. Old Woodward, Suite 100
Birmingham, MI 48009
(248) 792-2398
sking@kingandmurray.com

Dated: January 26, 2017

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

SHAWNIE VEDDER,

       Plaintiff,

v.                             Case No. 2:16-cv-14485-AJT-RSW

CREDIT ACCEPTANCE
CORPORATION,
a Michigan corporation,

       Defendant.

---

| | |
|---|---|
| Sergei Lemberg | Stephen W. King (P56456) |
| LEMBERG LAW, LLC | KING AND MURRAY PLLC |
| Attorneys for Plaintiff Shawnie Vedder | Attorneys for Defendant Credit |
| 43 Danbury Rd, 3rd Floor | Acceptance Corporation |
| Wilton, CT 06897 | 355 S. Old Woodward, Suite 100 |
| (203) 653-2250 | Birmingham, MI  48009 |
| slemberg@lemberglaw.com | (248) 792-2398 |
| | sking@kingandmurray.com |

---

## **MEMORANDUM IN SUPPORT**

## TABLE OF CONTENTS

Issues Presented……………………………………………………………ii

Controlling and Most Appropriate Authority……………………………iii

Index of Authorities………………………………………………………iv

Index of Exhibits…………………………………………………………vi

Introduction and Summary………………………………………………1

Background…………………………………………………………………4

A.    The Facts Underlying Plaintiff's TCPA Claim……………………………4

B.    The 2015 FCC Order and the Challenge Lawsuit…………………………5

1.    "Called Party"……………………………………………………………5

2.    "ATDS Equipment"………………………………………………………6

Argument……………………………………………………………………6

A.    Legal Standard……………………………………………………………6

B.    A Stay is Necessary and Warranted Pending the D.C. Circuit's Ruling…….7

1.    The interests of judicial economy favor granting the stay………………….7

2.    If this case is not stayed, Credit Acceptance will suffer hardship…………..8

3.    Plaintiff will not be prejudiced by a stay……………………………………9

4.    Courts commonly stay cases under the same circumstances………………10

Conclusion………………………………………………………………12

## ISSUES PRESENTED

1.      Whether a temporary stay is appropriate in the present matter while the "Challenge Lawsuit" (currently pending in the D.C. Circuit) seeks to vacate and/or amend the 2015 FCC Order on the issues of potential liability for calls to cell phone numbers and on the definition of an ATDS, both of which are relevant to this case.

Credit Acceptance submits that this Court should answer this question in the affirmative and temporarily stay all proceedings in this action until the Challenge Lawsuit has been resolved by the D.C. Circuit.

## CONTROLLING AND MOST APPROPRIATE AUTHORITY

Credit Acceptance relies on the authorities cited in its Memorandum in Support including, without limitation, the following cases and/or orders: (1) *Jones v. Credit Acceptance Corporation*, No. 2:15-cv-13165-VAR-EAS (E.D. Michigan, Dec. 15, 2016); (2) *Kolloukian v. Uber Technologies, Inc.*, Civil No. 15-2856, 2015 U.S. Dist. LEXIS 174005 (C.D. Cal. Dec. 14, 2015); (3) *Abplanalp v. United Collection Bureau, Inc.*, No. 3:15-cv-203, 2016 U.S. Dist. LEXIS 1762 (W.D. N.C. Jan. 7, 2016); (4) *Fontes v. Time Warner Cable, Inc.*, Civil No. 14-2060-CAS, 2015 U.S. Dist. LEXIS 169580 (C.D. Cal. Dec. 17, 2015); (5) *Acton v. Intellectual Capital Management, Inc.*, 15-4004, 2015 U.S. Dist. LEXIS 172149 (E.D.N.Y. Dec. 28, 2015); (6) *Coatney v. Synchrony Bank*, No. 6:16-cv-389-Orl-22TBS (M.D. Fla. Aug. 2, 2016); (7) *Ricks v. Allied Interstate, LLC*, No. 3:16-cv-00205-HES-PBD, 2016 U.S. Dist. LEXIS 118956 (M.D. Fla. July 11, 2016); (8) *Shahin v. Synchrony Fin., et al.*, Case No. 8:15-cv-02941-MSS-EAJ, 2016 U.S. Dist. LEXIS 119260 (M.D. Fla. Apr. 12, 2016); (9) *Chattanond v. Discover Fin. Servs., LLC*, 2016 U.S. Dist. LEXIS 24700, 2016 BL 59996, 3 (C.D. Cal. Feb. 26, 2016); (10) *Mackiewicz v. Nationstar Mortg., LLC*, Case No. 6:15-cv-00465, 2015 U.S. Dist. LEXIS 180770 (M.D. Fla. Nov. 10, 2015); and (11) *Gensel v. Performant Techs., Inc.*, No. 13-cv-1196, 2015 U.S. Dist. LEXIS 142303, 2015 WL 6158072 (E.D. Wis. Oct. 21, 2015).

# INDEX OF AUTHORITIES

*Abplanalp v. United Collection Bureau, Inc.,*
2016 U.S. Dist. LEXIS 1762 (W.D. N.C. Jan. 7, 2016)..................................3

*ACA Int'l v. Fed. Commc'ns Comm's,*
No. 15-1211 (D.C. Cir. filed July 10, 2015)...........................................1

*Acton v. Intellectual Capital Management, Inc.,*
2015 U.S. Dist. LEXIS 172149 (E.D.N.Y. Dec. 28, 2015)........................3

*Cardenas v. AmeriCredit Fin. Servs. Inc.,*
2011 WL 846070 (N.D. Cal. Mar. 8, 2011)..........................................11

*Chattanond v. Discover Fin. Servs., LLC,*
2016 U.S. Dist. LEXIS 24700 (C.D. Cal. Feb. 26, 2016).........................3

*Coatney v. Synchrony Bank,*
No. 6:16-cv-389-Orl-22TBS (M.D. Fla. Aug. 2, 2016).............................3

*Eagle SPE NV 1, Inc. v. S. Highlands Dev. Corp.,*
2013 WL 595821 (D. Nev. Feb. 15, 2013)..........................................11

*Fontes v. Time Warner Cable, Inc.,*
2015 U.S. Dist. LEXIS 169580 (C.D. Cal. Dec. 17, 2015)........................3

*Gensel v. Performant Techs., Inc.,*
2015 U.S. Dist. LEXIS 2015 (E.D. Wis. Oct. 21, 2015)..........................3

*Hickey v. Baxter,*
833 F.2d 1005 (4th Cir. 1987)......................................................11

*Jones v. Credit Acceptance Corporation,*
No. 2:15-cv-13165-VAR-EAS (E.D. Michigan, Dec. 15, 2016)....................#

*Kamara v. Polk,*
2014 U.S. Dist. LEXIS 15824 (N.D. W. Va. Nov. 7, 2014)........................7

*Kensington Physical Therapy, Inc. v. Jackson Therapy Partners, LLC,*
No. 8:11-cv-02467-PWG (Md. Jan 2, 2013)......................................12

iv

*Kolloukian v. Uber Technologies, Inc.,*
2015 U.S. Dist. LEXIS 174005 (C.D. Cal. Dec. 14, 2015)……………………. ….2

*Landis v. N. Am. Co.,*
299 U.S. 248 (1936)………………………………………………....………..6

*Int'l Nickel Co. v. Martin J. Barry, Inc.,*
204 F.2d 583 (4th Cir. 1953)………………………………………………...….6

*Mackiewicz v. Nationstar Mortg., LLC,*
2015 U.S. Dist. LEXIS 180770 (M.D. Fla. Nov. 10, 2015)………………….....3

*Ricks v. Allied Interstate, LLC,*
2016 U.S. Dist. LEXIS 118956 (M.D. Fla. July 11, 2016)………………………...3

*Shahin v. Synchrony Fin., et al.,*
2016 U.S. Dist. LEXIS 119260 (M.D. Fla. Apr. 12, 2016)………………….. ……3

# INDEX OF EXHIBITS

Exhibit A – Report and Recommendation to Grant Defendant's Motion to Stay, and Order Adopting Report and Recommendation in *Jones v. Credit Acceptance Corporation*, No. 2:15-cv-13165-VAR-EAS (E.D. Michigan, Dec. 15, 2016)

Exhibit B – Ten Unpublished Opinions

## INTRODUCTION AND SUMMARY

Plaintiff Shawnie Vedder ("Plaintiff") alleges that Credit Acceptance violated the TCPA by calling her cell phone using an automatic telephone dialing system ("ATDS") without her consent. [Dkt. 1.] Defendant Credit Acceptance Corporation ("Credit Acceptance") generally denies these allegations and respectfully requests that the Court stay this action pending resolution of challenges to the Federal Communications Commission's ("FCC") July 2015 Declaratory Ruling and Order (the "FCC Order") interpreting the Telephone Consumer Protection Act ("TCPA"), which is currently pending before the United States Court of Appeals for the D.C. Circuit and is directly relevant to this litigation.

The TCPA was enacted in 1991 to prevent abusive telemarketing calls and is interpreted periodically by the FCC, the entity charged with rulemaking authority over the TCPA. In 2015, the FCC issued a formal order interpreting numerous provisions of the TCPA and expanding the law's scope in several areas. Since the 2015 Order was released, nine companies (the "Petitioners") filed petitions in the D.C. Circuit[1] seeking review of the FCC's determinations. The petitions were consolidated (the "Challenge Lawsuit") and oral argument took place in October

---

[1] Pursuant to the Administrative Procedures Act, 47 U.S.C. § 402(a), the D.C. Circuit has exclusive jurisdiction to vacate the FCC's declaratory rulings.

2016. *See ACA Int'l v. Fed. Commc'ns Comm's*, No. 15-1211 (D.C. Cir. filed July 10, 2015). The Challenge Lawsuit requests the D.C. Circuit to vacate and/or amend the 2015 FCC Order on the issues of potential liability for calls to cell phone numbers and on the definition of an ATDS, both of which are relevant to this case. Specifically, there are two issues before the D.C. Circuit that are also central to this action: (1) whether the statutory term "called party" under the TCPA includes the "intended recipient" of a telephone call; and (2) whether equipment constitutes an ATDS if it merely has the potential capacity to randomly or sequentially generate telephone numbers to be dialed.

Depending on how the Challenge Lawsuit is decided, it may be dispositive of Plaintiff's TCPA claims and eliminate the need for time-intensive, resource heavy, and additional costly discovery, summary judgment proceedings, trial, and appeal. The D.C. Circuit's decision on the above two issues could also substantially alter and/or narrow Plaintiff's claims, as well as the scope of remaining discovery.

The Eastern District of Michigan recently had occasion to address these very issues. In *Jones v. Credit Acceptance Corporation*, No. 2:15-cv-13165-VAR-EAS (E.D. Michigan, Dec. 15, 2016), this Court granted Credit Acceptance's motion to stay on these *exact* issues. *See* Exhibit A – Report and Recommendation to Grant Defendant's Motion to Stay, and Order Adopting Report and Recommendation.

2

In addition, and within the last year, federal district courts all over the country have stayed similar cases pending the D.C. Circuit's decision whether to vacate the 2015 FCC Order on these issues. For example, in *Kolloukian v. Uber Technologies, Inc.*, Civil No. 15-2856, 2015 U.S. Dist. LEXIS 174005 *1-2 (C.D. Cal. Dec. 14, 2015), the court granted a stay pending appeal of the FCC's Omnibus Order to the D.C. Circuit, finding "a stay will conserve the Court's and the parties' resources by simplifying the issues in question, streamlining the resolution of substantive issues, and reducing the burden on the parties and the court." *Also see*, *Abplanalp v. United Collection Bureau, Inc.*, No. 3:15-cv-203, 2016 U.S. Dist. LEXIS 1762 (W.D. N.C. Jan. 7, 2016); *Fontes v. Time Warner Cable, Inc.*, Civil No. 14-2060-CAS, 2015 U.S. Dist. LEXIS 169580 (C.D. Cal. Dec. 17, 2015); *Acton v. Intellectual Capital Management, Inc.*, 15-4004, 2015 U.S. Dist. LEXIS 172149 (E.D.N.Y. Dec. 28, 2015); *Coatney v. Synchrony Bank*, No. 6:16-cv-389-Orl-22TBS (M.D. Fla. Aug. 2, 2016); *Ricks v. Allied Interstate, LLC*, No. 3:16-cv-00205-HES-PBD, 2016 U.S. Dist. LEXIS 118956 (M.D. Fla. July 11, 2016); *Shahin v. Synchrony Fin., et al.*, Case No. 8:15-cv-02941-MSS-EAJ, 2016 U.S. Dist. LEXIS 119260 (M.D. Fla. Apr. 12, 2016); *Chattanond v. Discover Fin. Servs., LLC*, 2016 U.S. Dist. LEXIS 24700, 2016 BL 59996, 3 (C.D. Cal. Feb. 26, 2016); *Mackiewicz v. Nationstar Mortg., LLC*, Case No. 6:15-cv-00465, 2015 U.S. Dist. LEXIS 180770 (M.D. Fla. Nov. 10, 2015); and *Gensel v. Performant Techs.,*

3

*Inc.*, No. 13-cv-1196, 2015 U.S. Dist. LEXIS 142303, 2015 WL 6158072 (E.D. Wis. Oct. 21, 2015).[2]

Here, not only is a stay appropriate, but it avoids the potential for inconsistent rulings on the scope of the TCPA, which should be resolved by the D.C. Circuit in reviewing challenges to the FCC's 2015 Order, and, of course, subsequent and expensive appeals. A stay would also benefit the parties and the Court without prejudicing Plaintiff. Discovery has not yet begun and the parties have not exchanged any documents. The stay would prevent the parties from unnecessarily allocating substantial time and resources to conduct additional discovery and to litigate claims through trial and appeal that the D.C. Circuit may ultimately decide are insufficient as a matter of law. A stay would conserve the Court's resources for the same reasons. Given the direct impact that resolution of the Challenge Lawsuit may have on this action, the Court should temporarily stay the case pending the D.C. Circuit's opinion in *ACA Int'l v. Fed. Commc'ns Comm's*.

## BACKGROUND

### A.   The Facts Underlying Plaintiff's TCPA Claim

As set forth above, Plaintiff filed a complaint against Credit Acceptance, alleging that Credit Acceptance placed calls to her cell phone using autodialer

---

[2] Each of the unpublished opinions are attached as Exhibit B (in alphabetical order).

equipment without her consent in violation of the TCPA. [Dkt. #1.]

## B.    The 2015 FCC Order and the Challenge Lawsuit

The FCC Order was narrowly issued after a contentious 3-2 vote.[3] At least one of the FCC commissioners believed that the FCC's ruling was "flatly inconsistent with the TCPA," thus "there is a legitimate possibility that the Court of Appeals [D.C. Circuit] may overturn that ruling." *Fontes*, 2015 U.S. Dist. LEXIS 169580 *12 (citing Dissenting Statement of Commissioner Ajit Pai).[4] Almost immediately, companies began filing petitions to challenge the FCC's interpretation and expansion of the TCPA. Of relevance to this lawsuit, the Challenge Lawsuit requests that the D.C. Circuit vacate, alter, and/or amend the FCC Order on two issues:

### 1.    "Called Party"

The 2015 FCC Order concluded that the statutory term "called party" means the "subscriber and customary user" of a cellular telephone number -- not the "intended recipient" of a call. *Id.* at ¶¶ 74, 78. In the Challenge Lawsuit, Petitioners contend that the "called party" should not be limited to the "subscriber and customary user," but should include the "intended recipient" (*i.e.*, here, the account

---

[3] https://apps.fcc.gov/edocs_public/attachmatch/FCC-15-72A1.pdf

[4] On January 23, 2017, Mr. Pai was named the new FCC Chairman.

holder). If the term "called party" is amended by the D.C. Circuit to include the "intended recipient," then there will be no liability under the TCPA in this case.[5]

## 2.    "ATDS Equipment"

Furthermore, the FCC interpreted the term ATDS to include any equipment that could *potentially* be modified to randomly or sequentially generate numbers, rather than equipment that *presently has capacity* to randomly and sequentially generate numbers. *Id* at p. 115. Petitioners challenge this broad definition, arguing that it far extends the scope of equipment that is intended to qualify as an ATDS for purposes of the TCPA. Thus, a decision by the D.C. Circuit may set precedent controlling a threshold issue in this matter: what constitutes an automatic telephone dialing system.

## ARGUMENT

## A.    Legal Standard

A district court has broad, inherent power to stay proceedings "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Int'l Nickel Co. v. Martin J. Barry, Inc.*, 204 F.2d 583, 586 (4th Cir. 1953). Three considerations are relevant to whether a court should exercise its discretionary

---

[5] Credit Acceptance denies liability under the TCPA for several other reasons that are not relevant to this Motion and thus, are not repeated herein. Nothing in this Motion is intended to constitute an admission of liability for Plaintiff's TCPA claim if the D.C. Circuit does not vacate, alter or amend the 2015 FCC Order.

power to stay proceedings: "(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party." *Kamara v. Polk*, No. 3:12-CV-143, 2014 U.S. Dist. LEXIS 15824 *3 (N.D. W. Va. Nov. 7, 2014) (summarizing the *Landis* factors). Here, each factor militates in favor of staying the proceedings pending the D.C. Circuit's ruling on the 2015 FCC Order.

**B.    A Stay is Necessary and Warranted Pending the D.C. Circuit's Ruling**

**1.    The interests of judicial economy favor granting the stay.**

First, significant interests of judicial economy will be served by staying the case. If the case is not stayed, the Court will be forced to spend significant time and resources hearing and deciding discovery disputes, summary judgment motions, conducting a settlement conference and scheduling conference, and trial, if necessary. In addition, if the stay is not granted, the Parties will begin significant and costly discovery on Plaintiff's claims, including written discovery and document production, and depositions. All of these milestones will drain valuable judicial resources. Yet, the time and effort of both the Court and the parties may ultimately prove entirely unnecessary based on the D.C. Circuit's ruling on the 2015 FCC Order. *Fontes*, 2015 U.S. Dist. LEXIS 169580 *14 ("If the Court of Appeals were to issue an order vacating the FCC's ruling in significant part after these deadlines had passed it would likely render moot substantial efforts

by the parties as well as many of the Court's rulings. Accordingly, in light of the risk of wasting the resources of the Court and the parties as well as the high degree of uncertainty in this area of law, the Court finds that a stay is appropriate"). For these reasons, a stay pending resolution of the appeal of the 2015 FCC Order promotes judicial economy and constitutes a more efficient use of this Court's and the parties' time and efforts.

### 2.    If this case is not stayed, Credit Acceptance could suffer hardship.

The second factor, hardship and equity to Credit Acceptance if the action is not stayed, also weighs in favor of a stay. If this case is permitted to proceed prior to clarification from the D.C. Circuit on the FCC Order, Credit Acceptance will face a significant hardship when it will be forced to spend substantial time and resources (financial and human) during discovery, summary judgment, and trial. *See, e.g., Cardenas*, 2011 WL 846070, at \*4 (noting injury to defendant absent a stay insofar as "there can be no legitimate dispute that conducting further proceedings, up to and including preparing for and conducting a trial *that may ultimately be unnecessary*, would result in significant litigation costs-as well as the expenditure of judicial resources"); *Eagle SPE NV 1, Inc.*, 2013 WL 595821, at \*3 ("Forcing the parties to go forward with this litigation and proceed with motion practice and discovery, which may ultimately be futile in light of the Nevada Supreme Court's decisions, would result in unnecessary expenses and a waste of

the parties['] and the court's time and resources.") (citations omitted).

Potentially unnecessary litigation  includes responding to (or challenging) discovery, cross summary judgment motions, and trial. Engaging in such activities will be extremely costly to Credit Acceptance and Plaintiff, especially if it is necessary to repeat – or eliminate all together – such activities once the D.C. Circuit rules on the 2015 FCC Order. A stay would avoid this hardship and after the D.C. Circuit decision, the Parties can return to litigating, if necessary, with no adverse effects on the Parties or the Court.

### 3.    Plaintiff will not be prejudiced by a stay.

Third, there is no conceivable prejudice to Plaintiff if her claims are stayed for a short period of time pending resolution of the Challenge Lawsuit by the D.C. Circuit. *See Kolloukian*, Civil No. 15-2856, 2015 U.S. Dist. LEXIS 174005 at *2 (staying case pending appeal of 2015 FCC Order, finding "[a] stay will not create undue prejudice to Plaintiff and the modest delay caused by the granted stay is reasonable in light of the implications the appellate decisions may have on this litigation"). Delay is not alone sufficient prejudice to deny Credit Acceptance's stay motion. *See Cardenas*, 2011 WL 846070, at *4 (finding balance of equities relating to stay pending Supreme Court ruling favored defendant where plaintiffs "may have shown that additional delay may result [in] some injury" but had made "no showing with respect to any harm to themselves specifically"). Plaintiff's

9

claims are not ones in which Plaintiff seeks or requires immediate relief. Nor does Plaintiff seek compensation for any actual injuries-in-fact that might be necessary to make Plaintiff whole. Instead, Plaintiff merely seeks statutory penalties for calls purportedly made—but not necessarily answered by Plaintiff—by Credit Acceptance to the telephone number in question.

Indeed, Plaintiff will also benefit from a stay. It is anticipated that, like Credit Acceptance, Plaintiff will expend substantial resources in litigating her claims, including conducting discovery. The D.C. Circuit heard oral argument on these issues in October of 2016 and will likely issue a decision within the next few months, if not sooner. Accordingly, any delay will be minimal. For these reasons, Credit Acceptance respectfully requests that this Court grant a stay pending the D.C. Circuit's ruling on the 2015 FCC Order.

### 4.    Courts commonly stay cases under the same circumstances.

As set forth above, many district courts across the country have stayed TCPA actions pending the D.C. Circuit's ruling in the Challenge Lawsuit, which may moot or narrow the claims at issue in this case and/or alter the scope of permissible discovery. In particular, if the D.C. Circuit determines that "called party" includes "intended recipient," then Plaintiff may have no claim under the TCPA as a matter of law, or at a minimum, it may substantially alter the scope of discovery relevant to this claim. Similarly, if the D.C. Circuit finds that an

"ATDS" is limited to equipment with present capacity to randomly and sequentially dial numbers, then it may impact the threshold liability question in this case of what constitutes an automatic telephone dialing system.

Like in this case, courts commonly stay cases when a pending decision is poised to squarely resolve a central issue in the pending case. *See, e.g., Hickey v. Baxter*, 833 F.2d 1005 (4th Cir. 1987) (unpublished table decision) (affirming district court order staying case pending Supreme Court resolution of relevant issues; "We find that the district court acted within its discretion in staying proceedings while awaiting guidance from the Supreme Court in a case that could decide relevant issues."); *accord Cardenas v. AmeriCredit Fin. Servs. Inc.*, No. C 09-04978 SBA, 2011 WL 846070 (N.D. Cal. Mar. 8, 2011) (holding that the orderly course of justice and the balance of hardships favored the imposition of a stay pending the Supreme Court's resolution in *Concepcion*); *Eagle SPE NV 1, Inc. v. S. Highlands Dev. Corp.*, No. 2:12-CV-00550-MMD, 2013 WL 595821, at *3 (D. Nev. Feb. 15, 2013) (finding a stay was warranted where the issues raised in the case before the court were similar to those raised in an appeal pending before the Nevada Supreme Court); *Kensington Physical Therapy, Inc. v. Jackson Therapy Partners, LLC*, No. 8:11-cv-02467-PWG (Md. Jan 2, 2013) (order granting motion to stay following U.S. Supreme Court's grant of certiorari in *Genesis*). The same result is warranted here. *Fontes*, 2015 U.S. Dist. LEXIS

11

169580 *13 ("If the Court of Appeals were to find that the FCC had reached the wrong conclusion as to any of these issues [scope of "called party" or "ATDS"] that could potentially be dispositive of the outcome in this case....at a minimum, the Court finds that it is prudent to await further guidance from the D.C. Circuit.")

## CONCLUSION

For the foregoing reasons, Defendant Credit Acceptance Corporation respectfully requests that the Court grant its Motion to Stay and enter an Order staying all proceedings in this case until the D.C. Circuit renders a decision on the above-mentioned issues in *ACA Int'l v. Fed. Commc'ns Comm's*, No. 15-1211 (D.C. Cir. filed July 10, 2015).

Respectfully Submitted,

By: /s/ Stephen W. King
    Stephen W. King (P56456)
    KING & MURRAY PLLC
    Attorneys for Defendant Credit
    Acceptance Corporation
    355 S. Old Woodward, Suite 100
    Birmingham, MI 48009
    (248) 792-2397
    sking@kingandmurray.com

Dated: January 26, 2017

12

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 26, 2017 I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification to all counsel of record.

By: */s/ Cathy A. Conti*          
Cathy Conti
355 S. Old Woodward, Suite 100
Birmingham, MI 48009
(248) 792-2398
cconti@lennonlawpllc.com

13

EXHIBIT

A

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VEDIA L. JONES,                           Civil Action No.: 15-13165
                                          Honorable Victoria A. Roberts
                    Plaintiff,            Magistrate Judge Elizabeth A. Stafford

v.

CREDIT ACCEPTANCE
CORPORATION,

                    Defendant/
          Third-Party Plaintiff,

v.

KALEAYAH JACKSON,

          Third-Party Defendant.

_____/

**REPORT AND RECOMMENDATION TO GRANT
DEFENDANT'S MOTION TO STAY [R. 21]**

## I.     Introduction

Plaintiff Vedia L. Jones alleges that Credit Acceptance Corporation

("CAC") harassed her with debt-collection calls from an automatic

telephone dialer system, in violation of the Telephone Consumer Protection

Act ("TCPA"), 47 U.S.C. § 227, *et seq.*  [R. 1].  The debt belonged to

Jones's granddaughter, Third-Party Defendant Kaleayah Jackson.  [*Id.*,

PgID 3].  Jones alleges that she informed a CAC representative to stop calling her private cell phone, but that she continued to receive daily pre-recorded and/or synthesized voice messages from CAC on her phone.  [*Id.*, PgID 4].  Jones denies that she gave CAC consent to call her private cell phone, but CAC alleges in a third-party complaint that Jackson authorized CAC to call her using the phone number at issue.  [*Id.*; R. 17, PgID 110-11].

Currently before the Court is CAC's motion to stay proceedings pending a D.C. Circuit ruling on the validity of a FCC Declaratory Ruling regarding the TCPA from July 2015.  [R. 21].  For the reasons stated below, the Court recommends that CAC's motion be granted.

II.    **Analysis**

## A.

Under the TCPA, the term "automatic telephone dialing system" is defined as equipment that "has the capacity (A) to store or produce telephone numbers to be called, suing a random or sequential number generator; and (B) to dial such numbers."  § 227(a)(1).  Use of such an autodialer to call a cell phone without the "prior express consent of the called party" is prohibited. § 227(b)(1)(A)(iii).  In July 2015, the FCC reaffirmed a previous statement that the TCPA defines autodialers to include equipment that "has the capacity to store or produce, and dial

2

random or sequential numbers . . . even if it is not presently used for that purpose . . . ." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 7972 (2015). The 2015 Ruling additionally clarified that "a called party may revoke consent at any time and through any reasonable means," and that "the TCPA requires the consent not of the intended recipient of a call, but of the current subscriber," although it provided for a "one call" safe-harbor, allowing the caller to gain actual or constructive notice once the number is reassigned from the party who gave consent. *Id.* at 7889-90, 7999-8000.

ACA International and other parties have petitioned the D.C. Circuit to review the July 2015 Ruling, raising as issues the definition of autodialer as including equipment that merely has the capacity to autodial; the provisions deeming a caller as having constructive knowledge of the reassignment of a number after only one call (whether answered or not); the definition of "called party"; and the Ruling's interpretation of the right of revocation of consent. *ACA International, et al. v. FCC*, No. 15-1211, R. 1567590, R. 1568291, R. 1568293 (D.C. Circuit August 2015). Oral argument was heard on October 19, 2016.

CAC argues that proceedings in this matter should be stayed in the interest of judicial economy because the D.C. Circuit's decision may be

3

dispositive. It cites a number of opinions in which a stay was entered

pending the *ACA International* decision. [R. 21, PgID 142]. Jones

responds that the D.C. Circuit is unlikely to overturn the July 2015 Ruling

and that she would be prejudiced by a stay, and she cites a number of

opinions in which stays pending the court's decision were denied. [R. 27,

PgID 425-26]. The Court finds her claim of prejudice unconvincing and that

the interest of judicial economy would be furthered by granting the motion

to stay.

### B.

"The power to stay proceedings is incidental to the power inherent in

every court to control the disposition of the causes in its docket with

economy of time and effort for itself, for counsel and for litigants, and the

entry of such an order ordinarily rests with the sound discretion of the

District Court." *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 627 (6th Cir.

2014) (citations and internal quotation marks omitted). CAC bears the

burden of demonstrating the need for a delay and that neither Jones nor

the public will be harmed by a stay. *Id.* Despite the importance of

balancing these hardships, "[t]he district court must also consider whether

granting the stay will further the interest in economical use of judicial time

and resources." *Id.* (citations and internal quotation marks omitted).

4

CAC's argument that the D.C. Circuit Court's decision regarding the July 2015 Ruling will likely be dispositive of the issues raised in this lawsuit is not persuasive. CAC claims, "If the term 'called party' is amended by the D.C. Circuit to include the 'intended recipient,' then there will be no liability under the TCPA in this case." [R. 21, PgID 151]. But the specific issue raised before the D.C. Circuit addresses intended recipients who were previous subscribers of the number at issue. *Fontes v. Time Warner Cable Inc., No.* CV14-2060-CAS(CWX), 2015 WL 9272790, at \*2 (C.D. Cal. Dec. 17, 2015). That is not the issue in this case; Jones claims she was the subscriber of the phone number at issue since 2006, [R. 1, PgID 3], and CAC has not claimed that Jackson was a subscriber when she gave consent. Jones also states that she informed a CAC agent that the number belonged to her and to stop calling. [*Id.,* PgID 4]. So even if the D.C. Circuit decision leads to a conclusion that CAC had sufficient consent to call Jones's number, her claims against CAC may still have merit if she properly revoked such consent. And even if the autodialer definition in the July 2015 Ruling goes too far by including equipment that only has the potential to autodial, that does not mean that the equipment used to call Jones would not be considered an autodialer under a more narrow definition.

5

Having said that, the decision from the D.C. Circuit could affect the standards that would be relevant to a motion for summary judgment and to jury instructions. Specifically, the court's decision may be relevant to the determination of whether CAC could rely upon Jackson's alleged consent, of whether Jones properly revoked any consent and of the proofs necessary for determining whether the equipment CAC used to call Jones was an autodialer under the TCPA. Jones argues that the D.C. Circuit Court is unlikely to overturn the July 2015 Ruling, but the FCC was "sharply divided" on many of the pertinent issues, especially the proper definition of autodialer. *Fontes*, 2015 W.L. 9272790 at *3. "[I]n light of the close divide amongst the FCC commissioners and the fact that at least one commissioner believes the FCC's ruling is 'flatly inconsistent with the TCPA,' there is a legitimate possibility that the Court of Appeals may overturn that ruling. Accordingly, the proper interpretation of the TCPA remains unclear." *Id*. at *4. Anticipating that a decision from the D.C. Circuit Court would arrive around the end of 2016, the court in *Fontes* granted the defendant's motion to stay. *Id.* at 5.

See also *Coatney v. Synchrony Bank*, No. 616CV389ORL22TBS, 2016 WL 4506315, at *2 (M.D. Fla. Aug. 2, 2016) ("A stay will conserve judicial resources, will help clarify the law, and will enable this Court to

6

render a sound decision."); *Rose v. Wells Fargo Advisors, LLC*, No. 1:16-CV-562-CAP, 2016 WL 3369283, at *2 (N.D. Ga. June 14, 2016) ("[G]ranting a stay may simplify the issues in this case and conserve judicial resources because any order by this court issued in reliance on the July 2015 Ruling will be called into question if the D.C. Circuit overturns the July 2015 Ruling.").

Jones notes that other courts have disagreed. For example, in *Caudill v. Wells Fargo Home Mortg., Inc.*, No. CV 5: 16-066-DCR, 2016 WL 3820195, at *3 (E.D. Ky. July 11, 2016), the court denied a motion for stay, reasoning that it was unlikely that the *ACA International* case would be dispositive even if it impacted the standards for revoking consent; that the plaintiff contended that the defendant's equipment would meet a more narrow definition of autodialer than allowed by the July 2015 Ruling; and that the length of the stay would be uncertain. Jones also cites opinions such as *Baisden v. Credit Adjustments, Inc.*, 813 F.3d 338 (6th Cir. 2016) as indicating that a third party who does not possess common authority over a phone can never provide the requisite prior express consent. Nonetheless, the Court believes that a stay is warranted.

While understanding that erroneous jury instructions require reversal only if they are confusing, misleading and prejudicial, *E.E.O.C. v. New*

*Breed Logistics,* 783 F.3d 1057, 1075 (6th Cir. 2015), proceeding on motions for summary judgment or to trial with uncertain standards would unnecessarily invite potential prejudicial and reversible error, and thus potentially waste judicial resources.  Jones argues that it is clear that CAC actually used an autodialer when calling her, but CAC did not admit that in its amended answer.  [R. 17].  In fact, CAC denies that Jones informed its agent to stop calling her phone and that it nonetheless continued to call her number using autodial equipment.  [*Id.*, ¶¶ 17-18].  The Court should not speculate whether clarification of the standards that govern the TCPA will make a difference when these factual issues are being resolved.  Moreover, Jones's reliance on *Baisden* is misplaced because its description of "prior express consent" relied in part on the July 2015 Ruling that is now under review, *see* 813 F.3d at 343-44, and the issue in *Baisden* was not whether a third party may provide the requisite consent for a creditor to call a particular phone number, so that opinion does not resolve the issue raised here.

Nor has Jones demonstrated prejudice.  She asserts that, because she has deposed two corporate witnesses and is close to filing a motion for summary judgment, she would be placed at a tactical disadvantage if a stay were granted.  The logic of this argument is not evident, and there is

8

no tactical advantage to conducting discovery and preparing for trial when the TCPA standards are uncertain. *Rose*, 2016 WL 3369283 at \*2 ("[I]f the case is not stayed, the defendant may suffer hardship in conducting discovery and trial preparation in light of the uncertain difference between "potential" capacity and "theoretical" capacity under the definition of an ATDS."). And while the length of a stay would be uncertain, the D.C. Circuit Court has already held oral argument, so the stay should not be unduly long. *See Small v. GE Capital, Inc.,* No. EDCV152479JGBDTBX, 2016 WL 4502460, at \*3 (C.D. Cal. June 9, 2016) ("Although Plaintiff is correct that it is unclear when the D.C. Circuit will issue its ruling, numerous district courts within this district have stayed TCPA actions as early as December 2015 in anticipation of a ruling by the D.C. Circuit."); *Rose*, 2016 WL 3369283 at \*2 ("[T]he appeal before the D.C. Circuit is not likely to remain pending for an extended period of time, and the possible prejudice to the plaintiff is minimal.").

In light of the uncertainty surrounding the proper interpretation of the TCPA and the lack of demonstrated prejudice to Jones, the interest of judicial economy warrants a stay.

III.    **Conclusion**

For the reasons stated above, the Court recommends that CAC's

motion to stay [R. 21] be **GRANTED.**

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: October 31, 2016

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this

Report and Recommendation, but must act within fourteen days of service

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any

further right of appeal.   *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.*

*Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*,

638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but

fail to raise others with specificity will not preserve all objections that party

might have to this Report and Recommendation. *Willis v. Secretary of*

*HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection

must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled as** "Objection #1," "Objection #2,"

etc., and **must specify** precisely the provision of this Report and

Recommendation to which it pertains. Not later than fourteen days after

service of objections, **the non-objecting party must file a response** to

the objections, specifically addressing each issue raised in the objections in

the same order and labeled as "Response to Objection #1," "Response to

Objection #2," etc. The response must be **concise and proportionate in**

**length and complexity to the objections**, but there is otherwise no page

limitation. If the Court determines that any objections are without merit, it

may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served
upon counsel of record and any unrepresented parties via the Court's ECF
System to their respective email or First Class U.S. mail addresses disclosed
on the Notice of Electronic Filing on October 31, 2016.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VEDIA L. JONES,

    Plaintiff,

v.

                                Case No: 15-13165
                                Honorable Victoria A. Roberts

CREDIT ACCEPTANCE
CORPORATION,

    Defendant/Third-Party Plaintiff,

v.

KALEAYAH JACKSON,

    Third Party-Defendant.

_____/

## ORDER ADOPTING REPORT AND RECOMMENDATION

On October 31, 2016, Magistrate Judge Stafford issued a Report and

Recommendation, recommending that Defendant's Motion to Stay (Doc. #21) be

granted. Neither party filed objections within the fourteen day period pursuant to

Fed.R.Civ.P 72(b) and 28 U.S.C. § 636(b)(1). Accordingly, the Court adopts the Report

and Recommendation.

Defendant's motion is **GRANTED**; this case is **STAYED**. Defendants must

immediately notify Magistrate Judge Stafford when the D.C. Circuit Court issues a ruling

on the validity of a FCC Declaratory Ruling regarding the Telephone Consumer

Protection Act.

**IT IS ORDERED**.

/s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: December 15, 2016

The undersigned certifies that a copy of this
document was served on the attorneys of
record by electronic means or U.S. Mail on
December 15, 2016.

s/Linda Vertriest
Deputy Clerk

EXHIBIT

B



ZEENATH ABPLANALP, Plaintiff, v. UNITED COLLECTION BUREAU, INC.,
Defendant.

CIVIL ACTION NO. 3:15-CV-203-RJC-DCK

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF
NORTH CAROLINA, CHARLOTTE DIVISION

*2016 U.S. Dist. LEXIS 1762*

January 7, 2016, Decided
January 7, 2016, Filed

**SUBSEQUENT HISTORY:** Adopted by, Motion granted by, in part, Motion denied by, in part, Stay granted by, Stay denied by, As moot, Without prejudice, Motion denied by, Without prejudice *Abplanalp v. United Collection Bureau, 2016 U.S. Dist. LEXIS 14263 (W.D.N.C., Feb. 5, 2016)*

**COUNSEL:** [*1] For Zeenath Abplanalp, Plaintiff: M. Shane Perry, LEAD ATTORNEY, Collum & Perry, PLLC, Mooresville, NC.

For United Collection Bureau, Inc., Defendant: Ethan Geoffrey Ostroff, LEAD ATTORNEY, PRO HAC VICE, Troutman Sanders LLP, Virginia Beach, VA; Dennis Kyle Deak, Troutman Sanders, LLP, Raleigh, NC.

**JUDGES:** David C. Keesler, United States Magistrate Judge.

**OPINION BY:** David C. Keesler

**OPINION**

## MEMORANDUM AND RECOMMENDATION AND ORDER

THIS MATTER IS BEFORE THE COURT on "Defendant United Collection Bureau, Inc.'s Motion To Dismiss And To Compel Arbitration, Or, In The Alternative, To Stay The Proceedings" (Document No. 13). This motion has been referred to the undersigned Magistrate Judge pursuant to *28 U.S.C. §636(b)*, and is now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned

will respectfully recommend that the motion be granted in part and denied in part.

## BACKGROUND

Plaintiff Zeenath Abplanalp ("Abplanalp" or "Plaintiff") filed a "Complaint" (Document No. 1-1, pp.3-11) against United Collection Bureau, Inc. ("UCB" or "Defendant") in the Superior Court of Mecklenburg County, North Carolina, on March 30, 2015. Defendant filed a "Notice Of Removal Of Civil Action" [*2] (Document No. 1) with this Court on May 5, 2015. Defendant notes in its "Notice Of Removal..." that "Plaintiff asserts three causes of action purporting to arise under (1) *N.C. Gen. Stat. § 58-70-90, et seq.*, (2) the Fair Debt Collection Practices Act ("FDCPA"), *15 U.S.C. § 1692 et seq.*, and (3) the Telephone Consumer Protection Act ("TCPA") *47 U.S.C. § 227 et seq.*" (Document No. 1, p.1).

The Court issued a "Pretrial Order And Case Management Plan" (Document No. 5) on June 24, 2015. The "...Case Management Plan" includes the following deadlines: discovery completion -- November 6, 2015; mediation -- November 30, 2015; dispositive motions -- December 7, 2015; and trial -- March 7, 2016. (Document No. 5).

Defendant filed the pending "... Motion To Dismiss And To Compel Arbitration, Or, In The Alternative, To Stay The Proceedings" (Document No. 13) and "...Memorandum In Support..." (Document No. 14) on October 30, 2015. The "Response To Defendant United Collection Bureau Inc.'s Motion To Dismiss And To Compel Arbitration. . ." (Document No. 19) was filed on November 20, 2015. Defendant's "...Reply In Support..." was then filed on December 4, 2015.

This instant motion is ripe for review and disposition, and as such, a Memorandum And Recommendation to the Honorable Robert J. Conrad, [*3] Jr. is now appropriate.

## DISCUSSION

By its motion, Defendant requests that the Court issue an Order dismissing Plaintiff's Complaint without prejudice and compelling Plaintiff to submit her claims to arbitration. (Document No. 13, p.1). Or, in the alternative, Defendant requests that the Court stay these proceedings pending: (1) resolution of challenges currently before the Federal Communications Commission ("FCC"); and (2) class action settlement in Graff v. United Collection Bureau, Inc., 2:12-CV-02402 (E.D.N.Y.). (Document No. 13, p.1; Document No. 14, p.2).

### A. Arbitration Agreement

Defendant first asserts that Plaintiff "is required to arbitrate her claims brought in this lawsuit against UCB under the Federal Arbitration Act ("FAA")." (Document No. 14, p.1). Defendant notes that Plaintiff's claims are asserted against Defendant UCB for its alleged actions in attempting to collect a debt on behalf of Citibank, N.A. ("Citibank"). Id. Defendant contends that "Plaintiff's Card Agreement with Citibank contains a written arbitration provision ("Arbitration Agreement")" that "provides that claims by Plaintiff against anyone connected with or claiming through Citibank, including anyone to whom [*4] Plaintiff's debt was assigned for collection . . . are subject to arbitration." (Document No. 14, pp.1-2).

In support of its position that there is an applicable Arbitration Agreement, Defendant cites to the "Declaration Of Colene McNinch" (Document No. 10-2) and its attached "Card Agreement" (Document No. 10-2, pp.4-9) that were filed as exhibits to Defendant's "...Reply In Support Of Motion For Leave To File First Amended Answer" (Document No. 10) on October 26, 2015. See (Document No. 14, pp.3-5).

In response, Plaintiff asserts that she was "never noticed of an arbitration agreement." (Document No. 19, p.1). Plaintiff also notes that the Card Agreement produced by Defendant is not signed by Plaintiff, that the only date on the document is a copyright for 2011, and that there is no proof of notice attached. Id. (citing Document No. 10-2, pp.4-9). Plaintiff further suggests that the "Declaration of Colene McNinch" lacks sufficient specificity to link the cited Card Agreement and/or alleged Arbitration Agreement to Plaintiff. Id. Plaintiff concludes that there is no evidence that the proffered Arbitration Agreement "applies to any account of Plaintiff's." (Document No. 19, p.3).

Defendant's [*5] reply contends that "unrebutted evidence establishes Plaintiff is a party to the Arbitration Agreement" and that the gateway question of arbitrability should be decided by an arbitrator. (Document No. 22, p.1). Specifically, Defendant argues that "Plaintiff agreed to the Arbitration Agreement because she used her credit card account." (Document No. 22, p.2) (citations omitted).

The undersigned finds that this issue presents a close call. After careful consideration of the arguments and authority presented to the Court, the undersigned is persuaded that Plaintiff has raised compelling questions regarding the validity of the parties' alleged Arbitration Agreement. In particular, the undersigned is concerned that neither the McNinch Declaration, nor the alleged Card Agreement containing the alleged Arbitration Agreement, include any information that connects Plaintiff to those Agreements. See (Document No. 10-2). As noted by Plaintiff, Defendant has failed to show or allege, inter alia, any dates, signatures, or account numbers that supposedly connect the Arbitration Agreement to any account owned by Plaintiff. (Document No. 19).

Under the circumstances, the undersigned will recommend that [*6] the motion to dismiss this case and compel arbitration be denied without prejudice. Even if the undersigned determined there is an applicable arbitration agreement between these parties, it is more likely that this case would be stayed than dismissed, pending the outcome of arbitration. Regardless, based on the arguments and authority presented by the parties, the undersigned is not persuaded that arbitration should be compelled.

### B. FCC Resolution

Next, Defendant makes the alternative argument that this case should be stayed "pending resolution of challenges currently before the Federal Communications Commission ("FCC") concerning what telephony systems qualify as an automatic telephone dialing system ("ATDS"), which should be dispositive of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA") claims asserted by Plaintiff." (Document No. 14, pp. 2, 16-21). Defendant contends that "Plaintiff's claims for alleged violations of the TCPA are subject to a pending challenge to the FCC's July 2015 Declaratory Ruling and Order interpreting the TCPA." (Document No. 14, p.2) (citing In re Rules & Regulations Implementing the TCP Act of 1991, Declaratory Ruling and Order, 30 F.C.C.R. 7961 (2015) (the "FCC Order"). [*7]

Defendant contends that "Plaintiff alleges that calls placed manually to her alleged cellular phone number are violations of the TCPA because, although the calls were manually dialed, Plaintiff claims the telephony system

used to place calls had the capacity to place an autodialed call and thus does it qualifies as an ATDS within the TCPA, in particular as an ATDS is defined by the FCC Order." (Document No. 14, pp.2-3). See also, (Document No. 1-1, pp.5, 8-9).

Defendant notes that there are several appeals of the FCC Order "proceeding in the Court of Appeals for the District of Columbia Circuit, the resolution of any of which could be dispositive to the TCPA claims in this case." (Document No. 14, p.3) (citing ACA Int'l v. FCC, No. 15-1211 (D.C. Cir. July 10, 2015). According to Defendant, the United States Judicial Panel on Multidistrict Litigation consolidated these lawsuits before the Court of Appeals for the District of Columbia (the "Challenge Lawsuit"). (Document No. 14, p.17). Defendant argues that the pending challenge(s) to the FCC Order favor a stay, pursuant to the primary jurisdiction doctrine. (Document No. 14, p.3).

More specifically, Defendant asserts that to prove [*8] her TCPA claims, Plaintiff must prove that Defendant UCB used an ATDS to call Plaintiff's cell phone. (Document No. 14, p.20). Defendant argues that the telephone system used to place the calls at issue in this case is not an ATDS, but acknowledges that the FCC Order has caused significant confusion on this point. Id. Defendant concludes that a final resolution of the definition of ATDS under the TCPA is necessary to resolve the claims in this case. (Document No. 14, p.21).

Plaintiff's "Response..." (Document No. 19) declines to rebut, or even mention, Defendant's argument for a stay based on the pending appeal(s) of the FCC Order.

In reply, Defendant notes that "Plaintiff entirely failed to address the other reason for staying this proceeding," and argues that "the Court should find this argument to be uncontested." (Document No. 22, p.11). Defendant re-asserts that resolution of the definition of ATDS under the TCPA is critical to resolving the issues in this case, and therefore, in the interests of judicial economy this matter should be stayed.[1]

---

1    "Defendant's Suggestion Of Subsequently Decided Authority" (Document No. 23) was filed on December 21, 2015. That filing attaches a recent [*9] decision by the United States District for the Central District of California staying a case pending a ruling by the Court of Appeals on the FCC Order.

---

Based on Defendant's arguments and citations, and the lack of any rebuttal from Plaintiff, the undersigned finds good cause to recommend that this matter be stayed until the related Challenge Lawsuit regarding the FCC Order, currently before the United States Court of Appeals for the District of Columbia Circuit, is resolved.

## C. Graff Class Action

Finally, Defendant argues that Plaintiff is a member of the settlement class in Graff v. United Collection Bureau, Inc., Case no. 2:12-cv-02402 (E.D.N.Y.), which should be dispositive of claims brought by Plaintiff. (Document No. 14, pp.2-3, 21-23). As such, Defendant presents an additional alternative argument that this matter should be stayed pending final approval of the class action settlement in Graff. Id.

Because the undersigned is persuaded that there is already sufficient support for staying this matter pending appellate review of the FCC Order, the undersigned will decline to make a full analysis of Defendant's alternative argument based on the Graff lawsuit. Instead, the undersigned [*10] recommends that Plaintiff's final alternative request to stay this case pursuant to Graff be denied as moot, without prejudice to re-file at a later date if necessary and appropriate.

## RECOMMENDATION AND ORDER

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Defendant United Collection Bureau, Inc.'s Motion To Dismiss And To Compel Arbitration, Or, In The Alternative, To Stay The Proceedings" (Document No. 13) be **GRANTED in part and DENIED in part**. Specifically, the undersigned recommends that the request to dismiss and/or compel arbitration be denied, but that the request to stay be granted.

**IT IS FURTHER ORDERED** that the parties shall file a Status Report, jointly if possible, on **April 1, 2016, and every ninety (90) days** thereafter, until this action is **CLOSED.**

## TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to *28 U.S.C. § 636(b)(1)(C)*, and *Rule 72 of the Federal Rules of Civil Procedure*, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. *Fed.R.Civ.P. 72(b)(2)*. Failure to file objections to this Memorandum and Recommendation with [*11] the District Court constitutes a waiver of the right to *de novo* review by the District Court. *Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005)*. Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. *Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48, 106 S. Ct.*

*466, 88 L. Ed. 2d 435 (1985)*, reh'g denied, *474 U.S. 1111, 106 S. Ct. 899, 88 L. Ed. 2d 933 (1986)*.

**IT IS SO RECOMMENDED AND ORDERED.**

Signed: January 7, 2016

/s/ David C. Keesler

David C. Keesler
United States Magistrate Judge



MATTHEW ACTON and PETER MARCHELOS, individually and on behalf of all other similarly situated persons, Plaintiff, -against- INTELLECTUAL CAPITAL MANAGEMENT, INC. D/B/A SMS MASTERMINDS and SPENDSMART NETWORKS, INC., Defendants.

15-CV-4004(JS)(ARL)

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK

*2015 U.S. Dist. LEXIS 172149*

December 28, 2015, Decided
December 28, 2015, Filed

COUNSEL: [*1] For Plaintiff: Erik H. Langeland, Esq., Erik H. Langeland P.C., New York, NY.

For Defendants: Harrison Brown, Esq., Blank Rome LLP, Los Angeles, CA; Rither Alabre, Esq., Blank Rome LLP, New York, NY.

JUDGES: Joanna Seybert, United States District Judge.

OPINION BY: Joanna Seybert

OPINION

MEMORANDUM & ORDER

SEYBERT, District Judge:

Pending before the Court are the following: (1) Plaintiffs Matthew Acton and Peter Marchelos' ("Plaintiffs") motion for class certification (Docket Entry 2); (2) defendants Intellectual Capital Management Inc. d/b/a SMS Masterminds and Spendsmart Networks, Inc.'s ("Defendants") motion to stay proceedings (Docket Entry 23); (3) Defendants' request for judicial notice in support of their motion to stay proceedings (Docket Entry 24); and (4) the parties' Stipulation to Stay Proceedings (Docket Entry 26). The Court construes the parties' Stipulation to Stay Proceedings, which was filed as a motion, as a joint request for a stay of this matter. (Stip., Docket Entry 26.) For the following reasons, the parties' joint request for a stay of this proceeding is GRANTED and all pending motions are TERMINATED WITHOUT PREJUDICE to refiling upon the lifting of the stay.

BACKGROUND

Briefly, on July 8, 2015, [*2] Plaintiffs commenced this action against Defendants, individually and on behalf of an alleged class, asserting a claim pursuant to the Telephone Consumer Protection Act ("TCPA"). (See generally Compl., Docket Entry 1.) Plaintiffs allege that Defendants violated the TCPA by sending commercial text messages to Plaintiffs' and class members' cell phones without their consent. (Compl. ¶¶ 58-60.) Plaintiffs filed a motion for class certification simultaneously with the filing of their Complaint. (Class Cert. Mot., Docket Entry 2.) Plaintiffs' motion is presently sub judice.

On September 11, 2015, Defendants served Plaintiffs with Offers of Judgment pursuant to *Federal Rule of Civil Procedure 68.* (Defs.' Br., Docket Entry 23-1 at 4; Marchelos' Mot., Ex. 1, Docket Entry 22-1.) Plaintiff Peter Marchelos accepted Defendants' Offer of Judgment and the Court granted his motion for judgment based on settlement. (See generally Marchelos' Mot., Docket Entry 22.) Plaintiff Matthew Acton ("Acton") did not accept Defendants' Offer of Judgment. (Defs.' Br. at 4.)

Defendants filed a sub judice motion to stay proceedings pending the resolution of certain Supreme Court and District of Columbia Circuit matters. (Defs.' Mot., Docket Entry 23.) Defendants allege that the resolution of three cases for which the Supreme Court recently granted certiorari will likely result in precedent-controlling determinations with respect to the following issues in this case: (1) whether Defendants' *Rule*

68 offer of judgment renders this matter moot; (2) whether Acton has standing to pursue this matter in the absence of actual damages or injury in fact; and (3) whether Acton may certify a class of individuals that were not injured. (Defs.' Br., Docket Entry 23-1, at 1-2.) See also *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871 (9th Cir. 2014), cert. granted, 135 S. Ct. 2311, 191 L. Ed. 2d 977 (May 18, 2015); *Robins v. Spokeo, Inc.*, 742 F.3d 409 (9th Cir. 2014), cert. granted, 135 S. Ct. 1892, 191 L. Ed. 2d 762 (Apr. 27, 2015); *Bouaphakeo v. Tyson Foods, Inc.*, 593 F. App'x 578 (8th Cir. 2014), cert. granted, 135 S. Ct. 2806, 192 L. Ed. 2d 846 (Jun. 8, 2015) (collectively, the "Supreme Court Cases").

Specifically, the Petition for a Writ of Certiorari filed in the Campbell-Ewald matter presents the following questions: "1. Whether a case becomes moot, and thus beyond the judicial power of Article III, when the plaintiff receives an offer of complete relief on his claim" and "2. Whether the answer to the first question is any different when the plaintiff has asserted a class claim under *Federal Rule of Civil Procedure 23*, but receives an offer of complete relief before any class is certified." Petition for Writ of Certiorari, *CAMPBELL-EwALD CO.*, (No. 14-857) 2015 U.S. S. Ct. Briefs LEXIS 146, 2015 WL 2418891.¹ The Petition for a Writ of Certiorari filed in the Spokeo [*4] matter presents the question of "[w]hether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm . . . by authorizing a private right of action based on a bare violation of a federal statute." Petition for Writ of Certiorari, Spokeo, (No. 13-1339) 2013 U.S. Briefs 1339, 2014 WL 1802228. Finally, the Petition for a Writ of Certiorari filed in the Tyson matter presents the question of "[w]hether a class action may be certified or maintained under *Rule 23(b)(3)* . . . when the class contains hundreds of members who were not injured and have no legal right to any damages." Petition for Writ of Certiorari, Tyson, 2015 U.S. S. Ct. Briefs LEXIS 1145, 2015 WL 1285369 (No. 14-1146).²

> 1  The Campbell-Ewald Petition for a Writ of Certiorari sets forth a third question that is not relevant to the issues before this Court.
> 2  The Tyson Petition for a Writ of Certiorari sets forth an additional question that is not relevant to the issues before this Court.

Defendants also allege that appeals filed in the District of Columbia Circuit challenging the validity of a 2015 TCPA Order issued by the Federal Communications Commission (the "D.C. Circuit Appeals") will similarly affect the outcome of this litigation to the extent that the D.C. Circuit clarifies certain definitions within the TCPA. (Defs.' Br. at 8-9.) See also ACA Int'l v. FCC, No. 15-1211 (D.C. Cir.) (Lead case in consolidated ap-

peals). The Amended Petition for Review filed in ACA alleges, inter alia, that the FCC's treatment of the term "capacity" in the TCPA's definition of an "automatic telephone dialing system" is arbitrary, capricious, and an abuse of discretion. Amended Petition for Review at 2-3, ACA v. Int'l v. FCC, No. 15-1211 (D.C. Cir. July 13, 2015). The ACA Amended Petition for Review also requests that the FCC be compelled to either: (a) "establish a viable safe harbor [*5] for autodialed 'wrong number' non-telemarketing calls to reassigned wireless numbers" or (b) "define 'called party' as a call's intended recipient." Id. at 5.

Defendants request a stay pending the outcome of the Supreme Court Cases or, alternatively, a stay pending the disposition of the D.C. Circuit Appeals. (Defs.' Br. at 1-2.) Acton has not opposed Defendants' motion.

Subsequent to the filing of Defendants' motion, the parties' counsel executed a Stipulation agreeing to stay this matter pending the outcome of the Supreme Court Cases and the D.C. Circuit Appeals (the "Stipulation"). (Stip., Docket Entry 26.)

## DISCUSSION

The Court's inherent power to stay proceedings is incidental to its inherent power to "'control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 166, 81 L. Ed. 153 (1936)). In determining whether to enter a stay, the court considers: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties [*6] to the civil litigation; and (5) the public interest." *Trikona Advisors Ltd. v. Kai-Lin Chuang*, No. 12-CV-3886, 2013 U.S. Dist. LEXIS 40382, 2013 WL 1182960, at *2-3 (E.D.N.Y. Mar. 20, 2013) (internal quotation marks and citation omitted).

It is within the district court's sound discretion to enter a stay pending the disposition of an independent matter whose outcome will likely affect a case on the court's calendar. *Trikona*, 2013 U.S. Dist LEXIS 40382, 2013 WL 1182960, at *2. See, e.g., *Ruggeri v. Boehringer Ingelheim Pharm., Inc.*, 06-CV-1985, 2012 U.S. Dist. LEXIS 70781, 2012 WL 1521850 (D. Conn. Feb. 24, 2012) (Holding that a stay pending the Supreme Court's decision in an independent case was in the interests of justice where the Supreme Court's ruling could potentially conclude the case.); *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 619-22 (S.D.N.Y. 2012) (Granting a

stay pending the outcome of a Supreme Court case and noting that "a court may also properly exercise its staying power when a higher court is close to settling an important issue of law."); *In re Literary Works in Elec. Databases Copyright Litig., No. M-21-90, 2001 U.S. Dist. LEXIS 2047, 2001 WL 204212 (S.D.N.Y. Mar. 1, 2001)* (Granting a stay of proceedings pending a decision by the Supreme Court and holding that it would be an unnecessary waste of the court and the parties' resources to proceed with the litigation "before the Supreme Court more precisely defines the claims at issue.")

The Court finds that a stay pending the outcome of the Supreme Court Cases and the D.C. Circuit Appeals is in the interests of [*7] justice. The parties agree that a stay is appropriate and it is clear that the outcome of the Supreme Court Cases could potentially conclude this matter and will, at the very least, settle important issues of law relating to Acton's claims. Indeed, the Court's determination is in agreement with other district courts that have deemed it appropriate to stay TCPA lawsuits pending the outcome of Campbell-Ewald and Spokeo. *Eric B. Fromer Chiropractic, Inc. v. N.Y. Life Ins. and Annuity Corp., 15-CV-4767, 2015 U.S. Dist. LEXIS 148476, 2015 WL 6579779 (C.D. Cal. Oct. 19, 2015)* (collecting cases from the district courts of California, Florida, and Virginia staying TCPA cases pending the determination of Campbell-Ewald and/or Spokeo). Similarly, the resolution of the D.C. Circuit Court of Appeals will more precisely define terms set forth in the TCPA

Thus, the factors weigh in favor of a stay of this matter and the Court GRANTS the parties' request for a stay pending the outcome of the Supreme Court Cases and D.C. Circuit Court of Appeals.

CONCLUSION

The parties' joint request to stay this action (Docket Entry 26) is GRANTED insofar as this case is STAYED pending rulings from the Supreme Court in Gomez v. Campbell-Ewald Co., Robins v. Spokeo, Inc., and Bouaphakeo [*8] v. Tyson Foods, Inc., and pending a ruling from the District of Columbia Circuit in ACA Int'l v. FCC. All pending motions are TERMINATED; however, they may be refiled after the stay is lifted.

The Clerk of the Court is directed to ADMINIS-TRATIVELY CLOSE this case. The parties are directed to advise the Court within seven (7) days of the Supreme Court or District of Columbia Circuit's resolution of each case.

SO ORDERED

Dated: December 28, 2015

Central Islip, New York

/s/ JOANNA SEYBERT

Joanna Seybert, U.S.D.J.



DAISY CHATTANOND, Plaintiff, v. DISCOVER FINANCIAL SERVICES, LLC, Defendant.

CV 15-08549-RSWL-JCx

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

*2016 U.S. Dist. LEXIS 24700*

February 26, 2016, Decided
February 26, 2016, Filed

**PRIOR HISTORY:** *Robins v. Spokeo, Inc., 2011 U.S. Dist. LEXIS 14079 (C.D. Cal., Jan. 27, 2011)*

**COUNSEL:** [*1] For Daisy Chattanond, Plaintiff: Corinne D Orquiola, LEAD ATTORNEY, Krohn and Moss Ltd, Manhattan Beach, CA.

For Discover Financial Services LLC, Defendant: Julia B Strickland, LEAD ATTORNEY, Bryan J Weintrop, Arjun P Rao, Stroock and Stroock and Lavan LLP, Los Angeles, CA.

**JUDGES:** HONORABLE RONALD S.W. LEW, Senior United States District Judge.

**OPINION BY:** RONALD S.W. LEW

**OPINION**

**ORDER re: Motion To Stay Action [19]**

Currently before the Court is a Motion to Stay Action [19] ("Motion") filed by Defendant Discover Financial Services, LLC ("Defendant").

Having reviewed all papers submitted pertaining to this Motion, the Court **NOW FINDS AND RULES AS FOLLOWS**: the Court **GRANTS** Defendant's Motion and **STAYS** the Action pending the Supreme Court's decision in *Spokeo, Inc. v. Robins, 135 S. Ct. 1892, 191 L. Ed. 2d 762 (2015)*, and the D.C. Circuit's decision in Appeal No. 15-1211.[1]

    1   The Court **GRANTS** Defendant's Request for Judicial Notice [20]. *Reyn's Pasta Bella, LLC*

*v. Visa USA, Inc., 442 F.3d 741, 746 n. 6 (9th Cir. 2006); Sami v. Wells Fargo Bank, No. C-12-00108 DMR, 2012 U.S. Dist. LEXIS 109251, 2012 WL 3204194, at *1 (N.D. Cal. Aug. 3, 2012)* (granting request for judicial notice of a court-entered judgment).

**I. BACKGROUND**

**A. Factual Background**

Plaintiff Daisy Chattanond's ("Plaintiff") Action is for unlawful debt collection practices in violation of the Telephone Consumer Protection [*2] Act, *47 U.S.C. § 227 et seq.* ("TCPA") and the California Rosenthal Fair Debt Collection Practices Act, *Cal. Civ. Code § 1788 et seq.* ("RFDCPA").

Plaintiff alleges that her debt arose through a consumer credit transaction, and that in 2015, Defendant began placing collection calls to Plaintiff demanding payment for an alleged debt owed for a student loan. Id. at ¶¶ 9-10.

Plaintiff alleges that Defendant's calls were placed using an automatic telephone dialing system ("ATDS"). Id. at ¶ 13. Plaintiff also alleges that Defendant's automated collection calls were made without her consent. Id. at ¶ 15. Despite repeated requests to cease, Plaintiff alleges that Defendant continued to place multiple collection calls to Plaintiff on a daily basis. Id. at ¶ 16.

**B. Procedural Background**

On November 2, 2015, Plaintiff filed her Complaint [1]. Plaintiff requests statutory damages under both the TCPA and the RFDCPA. Compl. ¶¶ 19-22, 25-27.

On January 5, 2016, Defendant filed the instant Motion [19]. The Court took the matter under submission on February 3, 2016 [25].

## II. DISCUSSION

### A. Legal Standard

The authority to stay proceedings is incidental to the Court's inherent power to control its docket and calendar and to provide for a just determination of pending [*3] cases. *Lopez v. Am. Express Bank, FSB,* No. CV 09-07335 SJO (MANx), 2010 U.S. Dist. LEXIS 101476, 2010 WL 3637755, at *4 (C.D. Cal. Sept. 17, 2010) (citing *Landis v. N. Am. Co.,* 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936)). The Court, therefore, may "find it . . . efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd.,* 593 F.2d 857, 863 (9th Cir. 1979). The rule applies to judicial proceedings and does not require the issues of such proceedings be necessarily controlling of the action before the Court. *Id.* at 863-64. A stay should not be granted unless it appears likely that the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims. Id.; see *Landis,* 299 U.S. at 256-57 (discretion abused because the stay "continue[d] in effect" without "reasonable limits").

In exercising its discretion in determining whether to issue a stay, the Court must weigh the competing interests affected by the granting or denying of a request for a stay. *Lockyer v. Mirant Corp.,* 398 F.3d 1098, 1110 (9th Cir. 2005). The competing interests include (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could [*4] be expected to result from a stay." *CMAX, Inc. v. Hall,* 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis,* 299 U.S. at 254-55). The proponent of a stay has the burden of proving that a stay is justified. *Clinton v. Jones,* 520 U.S. 681, 708, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997).

### B. Discussion

#### 1. Stay Pending the Supreme Court's Decision in *Spokeo*

In Robins v. Spokeo, Inc., the Ninth Circuit held that an individual plaintiff has Article III standing to sue un-

der the Fair Credit Reporting Act ("FCRA") where the plaintiff alleges violations of statutory rights but has not pled actual harm in its complaint. 742 F.3d 409, 413, 2014 U.S. App. LEXIS 2136, (9th Cir. 2014), cert. granted, 135 S. Ct. 1892, 191 L. Ed. 2d 762 (U.S. Apr. 27, 2015) (No. 13-1339)

On April 27, 2015, the Supreme Court granted certiorari in *Spokeo.* 135 S. Ct. 1892, 191 L. Ed. 2d 762 (2015). The question presented to the Supreme Court is: "Whether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke the jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute."[2] The oral argument in Spokeo took place on November 2, 2015.[3]

> 2    Question Presented, *Spokeo,* 135 S. Ct. 1892, 191 L. Ed. 2d 762, available at http://www.supremecourt.gov/qp/13-01339qp.pdf
>
> 3    Supreme Court of the United States, Granted & Noted List, available at http://www.supremecourt.gov/grantednotedlist/15 grantednotedlist .

While Spokeo involves claims under the FCRA, the constitutional question extends to the TCPA. Other district courts have granted motions to stay in TCPA cases, pending [*5] the Supreme Court's determination of the standing issue in Spokeo. See, e.g., *Eric B. Fromer Chiropractic, Inc. v. N.Y. Life Ins. & Annuity Corp.,* No. CV 15-04767-AB (JCx), 2015 U.S. Dist. LEXIS 148476, 2015 WL 6579779, at *1 (C.D. Cal. Oct. 19, 2015) (staying TCPA case); *Tel. Sci. Corp. v. Hilton Grand Vacations Co.,* No. 6:15-cv-969-Orl-41DAB, 2015 U.S. Dist. LEXIS 159479, 2015 WL 744409, at *3 (M.D. Fla. Nov. 20, 2015) (same); *Duchene v. Westlake Servs., LLC,* No. 2:13-cv-01577, 2015 U.S. Dist. LEXIS 139269, 2015 WL 5947669, at *4 (W.D. Pa. Oct. 13, 2015) (same); *Boise v. ACE USA, Inc.,* No. 15-Civ-21264, 2015 U.S. Dist. LEXIS 87200, 2015 WL 4077433, at *3 (S.D. Fla. July 6, 2015) (same).

Moreover, district courts in the Ninth Circuit have granted longer stays than the stay requested here, pending the Supreme Court's decision in Spokeo. See, e.g., *Ramirez v. Trans Union, LLC,* No. 12-cv-00632-JSC, 2015 U.S. Dist. LEXIS 80692, 2015 WL 6159942, at *2 (N.D. Cal. June 22, 2015) (staying a case arising under the FCRA); *Provo v. Rady Children's Hosp.-San Diego,* No. 15cv0081 JM (BGS), 2015 U.S. Dist. LEXIS 100491, 2015 WL 6144029, at *1 (S.D. Cal. July 29, 2015) (staying a case arising under the Fair Debt Collection Practices Act ("FDCPA")).

Case 2:16-cv-14485-AJT-RSW   ECF No. 5   filed 01/26/17   PageID.61   Page 47 of 65

2016 U.S. Dist. LEXIS 24700, *                                    Page 3

Here, a stay of the Action is the fairest course for the parties. The outcome of Spokeo will affect the case at hand if the Supreme Court determines that Plaintiff does not have Article III standing by only alleging a bare violation of the TCPA, but no concrete harm. The Supreme Court has already heard oral argument in Spokeo, and the decision in Spokeo will likely be issued within a few months of this Order. Accordingly, the possible [*6] prejudice to Plaintiff is minimal, as this case will only be stayed for a few months until the Supreme Court's ruling in Spokeo.

Moreover, Plaintiff does not seek immediate injunctive relief to remedy an ongoing violation of the TCPA. See *Lopez, 2010 U.S. Dist. LEXIS 101476, 2010 WL 3637755, at *5* (finding that stay was warranted even though plaintiff suffered ongoing harm and sought injunctive relief because, among other things, plaintiff's harm could be remedied by an award of damages). Plaintiff will not be unduly prejudiced or harmed by a stay of the proceedings, which only stands to delay Plaintiff's potential recovery for a few months.

Defendant also faces the risk of unnecessary proceedings and expenses if this case is not stayed, as Defendant will incur costs relating to fact and expert discovery, preparation of pretrial motions, and trial preparation to defend this Action. These costs may be unnecessary if the Supreme Court finds that Plaintiff does not have Article III standing. "It would be burdensome for both parties to spend much time, energy, and resources on pretrial and discovery issues, only to find those issues moot within less than a year." *Lopez, 2010 U.S. Dist. LEXIS 101476, 2010 WL 3637755, at *4.*

A stay in this case will also streamline the case and avoid unnecessary litigation. [*7] See *Provo, 2015 U.S. Dist. LEXIS 100491, 2015 WL 6144029, at *1* (noting that a stay would streamline the case, identify controlling legal principles, and identify the scope of discovery). Accordingly, the public interest in preserving judicial resources weighs in favor of staying the case.

Lastly, the Court is confident that a stay of the action is appropriate because several other Ninth Circuit district courts have so similarly held. See *Ramirez, 2015 U.S. Dist. LEXIS 80692, 2015 WL 6159942, at *2* (staying FCRA case pending Spokeo decision); *Provo, 2015 U.S. Dist. LEXIS 100491, 2015 WL 6144029, at *1* (staying FDCPA case pending Spokeo decision); *Malakha v. Nationwide Credit, Inc.,* No. 3:15-cv-1562-DMS-MDD (S.D. Cal. Dec. 15, 2015), Def.'s Req. For Judicial Notice Ex. 4; *Fromer, 2015 U.S. Dist. LEXIS 148476, 2015 WL 6579779, at *1* (staying TCPA case pending Spokeo decision); *Patel v. Trans Union, LLC et al.,* No. 3:14-cv-0522-LB, 2015 U.S. Dist. LEXIS 176601 (N.D. Cal. Sept. 3, 2015), Def.'s Req. For

Judicial Notice, Ex. 3 (staying FRCA case pending Spokeo decision); *Larson v. Trans Union, LLC,* No. 12-CV-057260-WHO, 2015 U.S. Dist. LEXIS 83459, 2015 WL 3945052, at *8 (N.D. Cal. June 26, 2015) (staying FRCA case pending Spokeo decision).[4]

> 4   Plaintiff's reliance on *Speer v. Whole Food Market Grp., Inc.,* No. 8:14-cv-3035-T-26TBM, 2015 U.S. Dist. LEXIS 57783, 2015 WL 2061665, at *1 (M.D. Fla. Apr. 29, 2015) is not as persuasive as the cases mentioned above, as Speer was decided two days after the Supreme Court granted certiorari in Spokeo, and before oral argument in Spokeo was heard.

**2. Stay Pending Appeal No. [*8]  15-1211 in the D.C. Circuit**

A stay is also warranted pending the D.C. Circuit's decision on the appeals[5] of the Federal Communications Commission's ("FCC") In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, *30 FCC Rcd 7961 (2015)* ("July 2015 Ruling").

> 5   Defendant notes two appeals before the D.C. Circuit: (1) ACA Int'l v. Fed. Commc'ns Comm'n, Appeal No. 15-1211 (D.C. Circuit) (filed on Oct. 13, 2015), and (2) Chamber of Commerce v. Fed. Commc'ns Comm'n, Appeal No. 15-1306 (D.C. Circuit) (filed on Sept. 2, 2015). The D.C. Circuit consolidated Appeal No. 15-1306, and others, with Appeal No. 15-1211. Def.'s Req. For Judicial Notice, Ex. 5.

In ACA Int'l, Appeal No. 15-1211, the D.C. Circuit will address, among other things, what type of equipment constitutes an ATDS. Under the TCPA, an ATDS is equipment "which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *47 U.S.C. § 227(a)(1).* Under the July 2015 Ruling, a piece of equipment has sufficient "capacity" to qualify as an ATDS if it has the present or "potential" capacity to store or produce numbers to be called using a random generator, but not if it only has [*9]  the "theoretical" capacity. July 2015 Ruling at 7971-78 ¶¶ 10-24. The July 2015 Ruling does not clarify the difference between "potential" and "theoretical" capacity.

The D.C. Circuit will determine whether the FCC's treatment of the term "capacity" within the definition of an ATDS is "arbitrary, capricious, and an abuse of discretion, and results in an approach that does not comport with the caller's constitutional rights of due process and freedom of speech and that disregards the applicable statute." Def.'s Req. For Judicial Notice, Ex. 1. Because Plaintiff must prove that Defendant called her using an

ATDS in order to establish a TCPA claim, the definition of an ATDS is directly implicated in this litigation.[6] See *Meyer v. Portfolio Recovery Assocs., LLC, 707 F.3d 1036, 1043 (9th Cir. 2012)* ("The three elements of a TCPA claim are: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system [ATDS]; (3) without the recipient's prior express consent.").

   6   Plaintiff's argument that a "predictive dialer" definitively constitutes an ATDS is irrelevant. Plaintiff's Complaint does not allege that Defendant used a "predictive dialer" to call Plaintiff.

The final briefing in Appeal No. 15-1211 was completed on February 24, 2016. [*10]  Def.'s Req. For Judicial Notice, Ex. 5. Accordingly, Appeal No. 15-1211 is not likely to remain pending for an extended period of time, and the possible prejudice to Plaintiff is minimal.

Additionally, for similar reasons as set forth above, hardship to Defendant and considerations of judicial economy weigh in favor of a stay. If the case is not stayed, Defendant will suffer hardship in conducting discovery and trial preparation in light of the uncertain difference between "potential" capacity and "theoretical" capacity under the definition of an ATDS.

Lastly, granting a stay will simplify the issues in this case and conserve judicial resources. Any Order by this

Court which is issued in reliance on the July 2015 Ruling will be called into question if the D.C. Circuit overturns the July 2015 Ruling. Accordingly, the Court and both parties will benefit from a clarification of the applicable law. See *Provo, 2015 U.S. Dist. LEXIS 100491, 2015 WL 6144029, at *1.*

### III. CONCLUSION

For these reasons, the Court GRANTS Defendant's Motion [19] and STAYS the case until the Supreme Court decides Spokeo and the D.C. Circuit decides Appeal No. 15-1211. The parties shall jointly file a status report notifying the Court of how the parties wish to proceed in this [*11]  Action within fourteen (14) days of both decisions being issued.

Further, the Scheduling Conference, presently under submission [33], is vacated and will be reset as necessary.

**IT IS SO ORDERED.**

DATED: February 26, 2016

/s/ RONALD S.W. LEW

**HONORABLE RONALD S.W. LEW**

Senior U.S. District Judge


® LexisNexis®

3 of 9 DOCUMENTS

KENNETH COATNEY, Plaintiff, v. SYNCHRONY BANK and ALLIED INTER-
STATE, Defendants.

Case No: 6:16-cv-389-Orl-22TBS

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF
FLORIDA, ORLANDO DIVISION

*2016 U.S. Dist. LEXIS 118768*

August 2, 2016, Decided
August 2, 2016, Filed

**COUNSEL:** [*1] For Kenneth Coatney, Plaintiff: Octavio Gomez, LEAD ATTORNEY, Morgan & Morgan, PA, Tampa, FL.

For Synchrony Bank, Allied Interstate, Defendants: Jessica B. Reyes, Laudy Luna Perez, LEAD ATTORNEYS, Liebler, Gonzalez & Portuondo, PA, Miami, FL.

**JUDGES:** ANNE C. CONWAY, United States District Judge.

**OPINION BY:** ANNE C. CONWAY

**OPINION**

**ORDER**

This cause comes before the Court on Defendants Synchrony Bank and Allied Interstate's ("Defendants") Motion to Stay Proceedings, (Doc. No. 33), to which Plaintiff Kenneth Coatney ("Plaintiff") responded in opposition, (Doc. No. 34). For the reasons that follow, the Court will grant Defendants' motion.

**I. PROCEDURAL BACKGROUND**

In the Complaint, Plaintiff alleges that Defendants violated the *Telephone Consumer Protection Act ("TCPA")* by using an automatic telephone dialing system ("ATDS") to call Plaintiff without consent to collect on a debt. (Doc. No. 1 ¶¶ 20-32). Plaintiff alleges that Defendants made approximately 400 unwanted calls to Plaintiff. (Id. ¶¶ 33, 40). On June 20, 2016, Defendants moved to stay this proceeding pending a decision in the

D.C. Circuit Court decision, *ACA International v. Federal Communications Commission*, Case No. 15-1211, which Defendants contend is dispositive [*2] of Plaintiff's TCPA claims. (Doc. No. 33 at p. 1).

II.

**III. LEGAL STANDARD & DISCUSSION**

"The inherent discretionary authority of the district court to stay litigation pending the outcome of [a] related proceeding in another forum is not questioned." *CTI-Container Leasing Corp. v. Uiterwyk Corp., 685 F.2d 1284, 1288 (11th Cir. 1982)*. Courts consider several factors when evaluating a request for a stay, including "(1) whether a stay will unduly prejudice or tactically disadvantage the nonmoving party; (2) whether a stay will simplify the issues and streamline the trial, and (3) whether a stay will reduce the burden of litigation on the parties and on the court." *Freedom Sci., Inc. v. Enhanced Vision Sys., Inc., No. 8:11-CIV-1194-T-17, 2012 U.S. Dist. LEXIS 11410, 2012 WL 9064727, at *1 (M.D. Fla. Jan. 31, 2012)*

In the Motion to Stay, Defendants seek an order staying this case until the D.C. Circuit's decision in *ACA International*. (Doc. No. 33). The issue in *ACA International* bears directly on the instant case in that the ruling will determine whether the equipment that Defendants allegedly used to make telephone calls to Plaintiff is considered an ATDS for purposes of the TCPA. (Id. at p. 4). Defendants cite to a number of district court decisions granting a stay under similar circumstances; whereas Plaintiff cites to district court decisions holding the [*3]

Case 2:16-cv-14485-AJT-RSW   ECF No. 5   filed 01/26/17   PageID.64   Page 50 of 65

2016 U.S. Dist. LEXIS 118768, *                                        Page 2

opposite. (Doc. No. 33 at p. 3; Doc. No. 34 at p. 5). Additionally, Plaintiff argues that *ACA International* is not dispositive of his claims because he also alleges that Defendants used a pre-recorded voice in addition to an ATDS, either of which constitutes grounds for a violation. (Doc. No. 34 at p. 7). Defendants emphasize that the vast majority of Plaintiff's claims (over 400 telephone calls) are for violations of the TCPA using an ATDS. (Doc. No. 37 at p. 6). The Court agrees with Defendants that *ACA International* will be significant in the ultimate resolution of this case because a majority of Plaintiff's TCPA claims are based on the use of an ATDS.

In *ACA International*, the D.C. Circuit will address what constitutes an "ATDS" for purposes of a TCPA violation. *Rose v. Wells Fargo Advisors, LLC, No. 1:16-cv-562-CAP, 2016 U.S. Dist. LEXIS 85287, 2016 WL 3369283, at \*2 (N.D. Ga. June 14, 2016)*. The TCPA provides that an ATDS is "equipment which has the *capacity* (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *47 U.S.C. § 227(a)(1)* (emphasis added). In a July 10, 2015 FCC Ruling, the FCC broadly defined the capacity of an ATDS as "not limited to its current configuration but also includes potential [\*4] functionalities." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd 7961, 7974 (2015)*. In *ACA International*, the D.C. Circuit will determine whether this expansive definition of "capacity" is unconstitutionally overbroad and vague. *See ACA International*, No. 15-1211. Defendants argue that this determination may be dispositive of a majority of Plaintiff's TCPA claims because Defendants' equipment lacks the present capacity to make auto-dialed calls, but possesses the potential capacity to do so. (Doc. No. 33 at p. 6).

The Court finds that a stay is warranted. The Court is aware that district courts have gone both directions on this issue. However, the Court agrees with recent district court decisions in the Eleventh Circuit that have found, under similar circumstances, that a stay pending the resolution of *ACA International* is warranted. *See Rose, 2016 U.S. Dist. LEXIS 85287, 2016 WL 3369283; Shahin v. Synchrony Fin., et al, No. 8:15-cv-2941-35EAJ, 2016 U.S. Dist. LEXIS 119260 (M.D. Fla. Apr. 12, 2016); Mackiewicz v. Nationstar Mortgage LLC., No. 6:15-cv-465-0rl-18GJK, 2015 U.S. Dist. LEXIS 180770 (M.D. Fla. Nov. 10, 2015)*. Whether Defendants used an ATDS when making telephone calls to Plaintiff is "a threshold issue for liability under the TCPA and for the scope of discovery." *Rose, 2016 U.S. Dist. LEXIS 85287, 2016 WL 3369283, at \*2*. A [\*5] stay will conserve

judicial resources, will help clarify the law, and will enable this Court to render a sound decision. Importantly, Plaintiff has not shown that he will be prejudiced by a stay at such an early stage in the litigation. It is not likely the stay will be lengthy given that *ACA International* has been fully-briefed as of February 2016 and the potential prejudice is minimal. *See id.* Lastly, granting a stay "will reduce the burden of litigation on the parties and the Court by allowing the Court to avoid issuing a dispositive Order in the midst of an uncertain legal environment." *Mackiewicz, No. 6:15-cv-465-Orl-18GJK, 2015 U.S. Dist. LEXIS 180770 at \*3*.

## IV. CONCLUSION

Based on the foregoing, it is ordered as follows:

1. Defendants Synchrony Bank and Allied Interstate's Motion to Stay Proceedings Pending Ruling by the D.C. Circuit Court of Appeals, (Doc. No. 33), filed on June 20, 2016, is **GRANTED**. This case is **STAYED** pending the Circuit Court of Appeals for the District of Columbia's ruling in *ACA International v. Federal Communications Commission*.

2. Defendants are **ORDERED** to file a status report on November 1, 2016, and every three months thereafter.

3. The Parties are **ORDERED** that, within fourteen (14) [\*6] days of the decision in *ACA International*, they shall notify the Court of the ruling in that case, file a motion to reopen this case if necessary, and inform the Court whether and to what extent the ruling in that case has affected their respective positions in this case.

4. The Clerk is **DIRECTED** to ADMINISTRATIVELY CLOSE this case.

**DONE and ORDERED** in Chambers, in Orlando, Florida on August 2, 2016.

/s/ Anne C. Conway

ANNE C. CONWAY

United States District Judge



JOHN FONTES v. TIME WARNER CABLE INC.

CV14-2060-CAS(CWx)

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF
CALIFORNIA

*2015 U.S. Dist. LEXIS 169580*

December 17, 2015, Decided
December 17, 2015, Filed

**PRIOR HISTORY:** *Fontes v. Time Warner Cable Inc.,
2014 U.S. Dist. LEXIS 68561 (C.D. Cal., May 19, 2014)*

**COUNSEL:** [*1] For John Fontes, individually and on
behalf of all others similarly situated, Plaintiff: Joshua B
Swigart, LEAD ATTORNEY, Hyde and Swigart APC,
San Diego, CA; Seyed Abbas Kazerounian, LEAD AT-
TORNEY, Kazerouni Law Group APC, Costa Mesa,
CA; Suren N Weerasuriya, LEAD ATTORNEY, Todd
M Friedman, Law Offices of Todd M Friedman PC,
Beverly Hills, CA; Jessica R K Dorman, Hyde and
Swigart, San Diego, CA.

For Damon Byrd, Gregory Montegna, Plaintiffs: Jessica
R K Dorman, Hyde and Swigart, San Diego, CA.

For Time Warner Cable Inc., Defendant: Bryan A Mer-
ryman, J Jonathan Hawk, LEAD ATTORNEYS, White
and Case LLP, Los Angeles, CA.

**JUDGES:** Honorable CHRISTINA A. SNYDER,
UNITED STATES DISTRICT JUDGE.

**OPINION BY:** CHRISTINA A. SNYDER

**OPINION**

**CIVIL MINUTES - GENERAL**

**Proceedings:** (IN CHAMBERS) DEFENDANT TIME
WARNER CABLE INC.'S MOTION TO STAY AC-
TION [42]

The Court finds this motion appropriate for decision
without oral argument. See *Fed. R. Civ. P. 78; C.D. Cal.*

*Local Rule 7-15.* Accordingly, this matter is hereby taken
under submission.

**I. INTRODUCTION**

On October 30, 2015, plaintiffs John Fontes ("Fon-
tes"), Damon Byrd ("Byrd"), and Gregory Montegna
("Montegna") (collectively, "plaintiffs") filed the opera-
tive First Amended Complaint ("FAC") in this putative
class action [*2] against defendant Time Warner Cable,
Inc. ("Time Warner"). Dkt. 41. The FAC asserts the fol-
lowing claims against Time Warner: (1) negligent viola-
tions of the *Telephone Consumer Protection Act
("TCPA"), 47 U.S.C. §§ 227, et seq.;* and (2) knowing
violations of the *TCPA.* Id. In brief, plaintiffs allege that
they repeatedly received pre-recorded phone calls from
Time Warner. Plaintiffs further allege that, in violation
of the *TCPA,* these phone calls were made using an "au-
tomatic telephone dialing system" and that Time Warner
did not obtain plaintiffs prior express consent to receive
unsolicited telephone calls.

On November 20, 2015, Time Warner filed a motion
to stay this case. Dkt. 42. On November 30, 2015, plain-
tiffs filed an opposition, Dkt. 48, and on December 4,
2015, Time Warner filed a reply, Dkt. 49. Having care-
fully considered the parties' arguments, the Court finds
and concludes as follows.

**II. BACKGROUND**

As relevant here, the *TCPA* provides that:

It shall be unlawful for any person
within the United States, or any person
outside the United States if the recipient is
within the United States--

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called [*3] party) using any automatic telephone dialing system or an artificial or prerecorded voice . . .

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call . . . .

*47 U.S.C. § 227(b)(1)*. Here, plaintiffs allege that Time Warner violated the *TCPA* by calling them on their cellular telephones and leaving pre-recorded messages without their prior express consent. Compl. ¶¶ 28, 36, 47. Plaintiffs further allege that in making these phone calls, Time Warner used a device that qualifies as an "automatic telephone dialing system" as that term is defined by *47 U.S.C. § 227(a)(1)*.[1] Id. ¶¶ 24, 32, 43. Based on this alleged conduct, plaintiffs now seek to bring a class action on behalf of themselves and all other persons in the United States who similarly received pre-recorded phone messages from Time Warner. Id. ¶ 50.

1    *47 U.S.C. § 227(a)(1)* defines "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."

Time Warner contends that its conduct did not [*4] violate the *TCPA*. More specifically, it contends that in making these telephone calls, it was attempting to reach one of its customers regarding a past due account. Mot., at 2. Unlike plaintiffs, these customers had provided Time Warner with their prior express consent. Id. Time Warner asserts that it inadvertently reached plaintiffs, instead of its customers, because the customers numbers had been reassigned to plaintiffs without Time Warner's knowledge. Id. Time Warner also contends that the device it used to make these phone calls cannot be considered an "automatic telephone dialing system" because it does not have the *present* capacity to generate random or sequential telephone numbers. Id. at 4.

## A. Procedural Background

This action was initially filed as a putative class action by plaintiff Fontes on March 18, 2014. Dkt. 1. The original complaint asserted the same claims against Time Warner as the FAC. Id. On April 14, 2014, Time Warner filed a motion to dismiss or, in the alternative, stay this

case under the primary jurisdiction doctrine. Dkt. 12. As the basis for the requested stay, Time Warner explained that the FCC was currently considering two petitions (the "Petitions") requesting [*5] that the FCC clarify whether the *TCPA* imposes liability on entities that make automated calls and inadvertently reach persons other than the person who gave "prior express consent" to receive such calls.[2] See id.

2    The petitions were United Healthcare Services, Inc.'s "Petition for Expedited Declaratory Ruling," dated January 16, 2014, and ACA International's "Petition for Rulemaking," dated January 31, 2014. See Dkt. 13, Exs. B, C.

On May 19, 2014, the Court entered an order reserving ruling on Time Warner's motion, and staying this case on its own motion. Dkt. 23. The Court reasoned that a stay was "appropriate because it increases the likelihood that the Court will be able to address the parties' arguments after the FCC has acted on the Petitions." Id. On January 23, 2015, the Court lifted the stay in this case. Dkt. 28.

The parties subsequently engaged in class discovery; however, Fontes ultimately determined not to file a motion for class certification. Dkt. 38. Instead, the parties elected to engage in settlement negotiations. Id. While these negotiations were ongoing, Fontes' counsel filed two additional putative class actions on behalf of plaintiffs Montegna and Byrd. Dkt. 39. The [*6] Court permitted plaintiffs to consolidate their claims in this single action, and on October 30, 2015, plaintiffs filed the operative FAC. Id.

## B. The FCC's Declaratory Ruling and The D.C. Circuit Appeal

On July 10, 2015, the FCC issued its Declaratory Ruling responding to the Petitions. July 10, 2015 FCC Declaratory Ruling and Order. As relevant here, the FCC ruled that the *TCPA's* use of the term "capacity" in the definition of "automatic telephone dialing system" does not exempt equipment that lacks the "present ability" to dial randomly or sequentially. Id. ¶ 15. "In other words, the capacity of an autodialer is not limited to its current configuration but also includes its potential functionalities." Id. ¶ 16.

The FCC also concluded that the term "called party" should be defined as "the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan." Id. ¶ 73. In settling on this definition, the FCC rejected a suggestion made by several commentators to define "called party" as the "intended" recipient of the phone

call. Id. ¶ 74. Thus, the FCC explained [*7] that, subject to one limited exception, "calls to reassigned wireless numbers violate the *TCPA* when a previous subscriber, not the current subscriber or customary user, provided the prior express consent on which the call is based." Id. ¶ 73.

Finally, the FCC determined that a very limited safe harbor should apply for "callers who make calls without knowledge of reassignment and with a reasonable basis to believe they have valid consent to make the call." Id. at ¶ 72. Such callers "should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber. If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such." Id.

The FCC was sharply divided on many of these issues. In particular, with regard to the proper definition of an autodialer the commissioners split 3-2. See id. One of the dissenting commissioners, Ajit Pai, who dissented from the entirety of the majority's ruling wrote:

> Some lawyers go to ridiculous lengths to generate new *TCPA* business. They have asked family members, friends, and [*8] significant others to download calling, voicemail, and texting apps in order to sue the companies behind each app. Others have bought cheap, prepaid wireless phones so they can sue any business that calls them by accident in cases of reas[s]igned telephone numbers. . . . the common thread here is that in practice the *TCPA* has strayed far from its original purpose. And the FCC has the power to fix that. . . . Instead, the Order takes the opposite tack. Rather than focus on the illegal telemarketing calls that consumers really care about, the Order twists the law's words even further to target useful communications between legitimate businesses and their customers. This Order will make abuse of the *TCPA* much, much easier. And the primary beneficiaries will be trial lawyers, not the American public.

Dissenting Statement of Commissioner Ajit Pai. Specifically with regard to the FCC's interpretation of the term "automatic telephone dialing system," Commissioner Pai stated:

> The Order dramatically expands the *TCPA's* reach. The *TCPA* prohibits a person from making "any call" to a mobile phone "using any automatic telephone dialing system," except in certain defined circumstances. The statute defines an "automatic [*9] telephone dialing system" as "equipment which has the capacity–(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." As three separate petitions explain, trial lawyers have sought to apply this prohibition to equipment that *cannot* store or produce telephone numbers to be called using a random or sequential number generator and that *cannot* dial such numbers.
>
> That position is flatly inconsistent with the *TCPA*. The statute lays out two things that an automatic telephone dialing system must be able to do or, to use the statutory term, must have the "capacity" to do. If a piece of equipment *cannot* do those two things—if it *cannot* store or produce telephone numbers to be called using a random or sequential number generator and if it cannot dial such numbers—then how can it possibly meet the statutory definition? It *cannot*. To use an analogy, does a one-gallon bucket have the capacity to hold two gallons of water? Of course not.

Id. (some emphasis added).

After the FCC issued its ruling, nine companies filed petitions with the United States Court of Appeals for the District of Columbia Circuit (the "Court of Appeals") [*10] seeking review of the FCC's Declaratory Ruling. Dkt. 44, Ex. C (docket sheet for ACA Int'l, et al. v. Fed. Commncn's Comm., No. 15-1211 (D.C. Cir. 2015). Those petitions were subsequently consolidated into a single case, ACA International, et al. v. Federal Communications Commission. Id. All of the petitions request that the D.C. Circuit vacate the FCC's ruling with regard to the potential liability for calls to reassigned cell phone numbers and the definition of an "automatic telephone dialing system." See, e.g., Dkt. 44, Ex. D (ACA Int 'l, et al. v. Fed. Commncn's Comm., No. 15-1211, Am. Pet. for Review by ACA Int'l, Dkt. 1562251 at 4-5 (D.C. Cir. July 13, 2015)). The D.C. Circuit set a briefing schedule requiring all briefs to be filed by February 24, 2016. Dkt. 44, Ed. E (Order, No, 15-211 at 1-2 (D.C. Cir. Oct. 13,

2015). A hearing will be scheduled after all briefs are submitted. Id.

Time Warner now requests that the Court stay this case pending a decision from the Court of Appeals regarding the validity of the FCC's Declaratory Ruling.

## III. ANALYSIS

A district court has discretionary power to stay proceedings. See *Landis v. N. Am. Co., 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936).* The court "may, with propriety, find it is efficient for its own [*11] docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal. Ltd., 593 F.2d 857, 863 (9th Cir. 1979).* Among the factors to be weighed in deciding whether to stay a pending proceeding "are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp., 398 F.3d 1098, 1110 (9th Cir. 2005).* "'[I]f there is even a fair possibility that the stay . . . will work damage to someone else,' the stay may be inappropriate absent a showing by the moving party of 'hardship or inequity.'" *Dependable Highway Express, 498 F.3d at 1066* (quoting *Landis, 299 U.S. at 255*). However, "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity.'" *Lockyer, 398 F.3d at 1112.* In all cases, "[t]he proponent of a stay bears the burden of establishing its need." *Clinton v. Jones, 520 U.S. 681, 706, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997).*

The Court finds that under the circumstances in this case, it is prudent to stay this case pending resolution of the Court of Appeals review of the FCC's Declaratory Ruling. When the Court previously stayed this case, it did so [*12] in the hopes that a brief stay would provide time for the FCC to issue a ruling clarifying several seemingly ambiguous and contested terms in the *TCPA*. The FCC has now issued its ruling. However, in light of the close divide amongst the FCC commissioners and the fact that at least one commissioner believes the FCC's ruling is "flatly inconsistent with the *TCPA*," there is a legitimate possibility that the Court of Appeals may overturn that ruling. Accordingly, the proper interpretation of the *TCPA* remains unclear.

At first glance, it appears that the FCC's ruling expands the scope of liability in cases of reassigned phone numbers. The FCC accepted a definition of "called party" that includes the subscriber of a phone number, even where that person has received a reassigned number.

Likewise, the FCC adopted only a limited safe harbor of one year, as opposed to a more expansive safe harbor as some petitioners had suggested. And, the FCC adopted a broader definition of "automatic telephone dialing system" that focuses on a devices *potential* capabilities, as opposed to a narrow definition based on a devices *present* capabilities. See also, July 10, 2015 FCC Declaratory Ruling and Order ¶ [*13]  84 ("we see nothing in the law or legislative history suggesting that Congress intended lesser--or no--protection for the unfortunate consumer who inherited a new number [i.e., a reassigned number]"). If the Court of Appeals were to find that the FCC had reached the wrong conclusion at to any of these issues that could potentially be dispositive of the outcome in this case. As such, Time Warner argues in its motion that "[i]f the D.C. Circuit holds that the statutory term 'called party' means the intended recipient of the call, that the safe harbor provision extends beyond the first call, or that the definition of autodialer should be limited to equipment with only the present capacity to generate random or sequential telephone numbers, [Time Warner] will have a complete defense to Plaintiffs' claims." Mot., at 11. While it is not necessary in the instant motion for the Court to reach the merits of Time Warner's contention, at a minimum, the Court finds that it is prudent to await further guidance from the D.C. Circuit.

A decision by the Court of Appeals is likely anticipated by the end of next year. However, the Court is currently scheduled to hear argument regarding plaintiffs' motion for [*14]  class certification in June of next year and the deadline for the parties to file dispositive motions is currently scheduled for October of next year. Dkt. 40. If the Court of Appeals were to issue an order vacating the FCC's ruling in significant part after these deadlines had passed it would likely render moot substantial efforts by the parties as well as many of the Court's rulings. Accordingly, in light of the risk of wasting the resources of the Court and the parties as well as the high degree of uncertainty in this area of the law, the Court finds that a stay is appropriate in this case.[3]

3   Plaintiffs contend that the Court of Appeals ruling will not clarify the issues in this case. Specifically, plaintiffs note that while that court "has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part) or to determine the validity" of the FCC's ruling, it does not have the authority to enter its own interpretation of the issues presented by the FCC's ruling. Opp'n., at 6 (citing *28 U.S.C. § 2342(1)*). As such, plaintiffs argue that the best Time Warner can hope for is that the D.C. Circuit will simply vacate the FCC's ruling, not a substantive ruling favoring their interpretation of the *TCPA*. [*15]  Id. Plaintiffs argument

is unavailing. First, if the FCC's ruling is upheld, that will resolve the dispute regarding the validity of the FCC's interpretation of the *TCPA* and the Court will be able to proceed applying the *TCPA* as it was interpreted by the FCC. On the other hand, if the Court of Appeals vacates any portion of the FCC's Declaratory Ruling, at a minimum, the Court will have the benefit of the court's reasoning in doing so. And, the potential that the FCC's ruling on many potentially dispositive issues in this case may be vacated, in and of itself, supports granting Time Warner's motion.

Nonetheless, plaintiffs argue that a stay is inappropriate because they will suffer prejudice if this case is stayed. In particular, plaintiffs note that this is the second time the Court has stayed this action. However, another court confronted with this same situation nonetheless opted to stay its case while the Court of Appeals evaluates the FCC's ruling. In *Gensel v. Performant Technologies, Inc., 2015 U.S. Dist. LEXIS 142303, 2015 WL 6158072 (E.D. Wisc. Oct. 20, 2015)*, the court initially granted the defendants motion to stay the case pending the issuance of the Declaratory Ruling. After the FCC issued its ruling, the defendants again moved for a stay pending the resolution of the appeals of that [*16] ruling. *2015 U.S. Dist. LEXIS 142303, [WL] at *1*. The Court granted the motion for a second stay noting that "a stay pending the outcome of the appeals from the FCC's July 10 Declaratory Ruling and Order is in the interest of judicial economy." *2015 U.S. Dist. LEXIS 142303, [WL] at *2.*

Moreover, the potential prejudice to plaintiffs from a second stay is mitigated by the fact that two of the plaintiffs--Montegna and Byrd--only recently joined this case and were never subject to the Court's earlier stay. Furthermore, with regard to plaintiff Fontes, the Court notes that the stay in this case has been lifted since January of this year and that, in the interim, Fontes elected not to pursue a motion for class certification. Accordingly, while a stay may delay the resolution of this case, the Court finds that, this is not a sufficient basis for denying Time Warner's motion.

## IV. CONCLUSION

In accordance with the foregoing, the Court finds that a stay is appropriate in these circumstances and therefore GRANTS Time Warner's Motion. It is ORDERED that this action is hereby removed from this Court's active caseload until further application by the parties or order of this Court. The parties are directed to file joint status reports reporting on the status of the Court of Appeals [*17] review of the FCC's July 10 Declaratory Ruling in ACA International, et al. v. Federal Communications Commission every 120 days or upon a decision in that case, whichever first occurs.

This Court retains full jurisdiction over this action and this Order shall not prejudice any party to this action. All dates in this action are hereby **VACATED** and defendant's Motion to Dismiss [12] is hereby MOOT.

IT IS SO ORDERED.



LENNETT GENSEL, Plaintiff, -vs- PERFORMANT TECHNOLOGIES, Inc., Defendant.

Case No. 13-C-1196

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF WISCONSIN

*2015 U.S. Dist. LEXIS 142303*

October 20, 2015, Decided
October 20, 2015, Filed

**PRIOR HISTORY:** *Gensel v. Performant Techs., Inc., 2015 U.S. Dist. LEXIS 9736 (E.D. Wis., Jan. 28, 2015)*

**COUNSEL:** [*1] For Lennett Gensel, Plaintiff: Heidi N Miller, Nathan E DeLadurantey, DeLadurantey Law Office LLC, Milwaukee, WI.

For Performant Technologies Inc, Defendant: Jessica L Klander, Michael A Klutho, Bassford Remele PA, Minneapolis, MN.

**JUDGES:** HON. RUDOLPH T. RANDA, United States District Judge.

**OPINION BY:** RUDOLPH T. RANDA

**OPINION**

**DECISION AND ORDER**

On January 28, 2015, the Court granted Performant Technologies, Inc.'s motion to stay this matter pending a ruling from the Federal Communications Commission on two petitions regarding the Telephone Consumer Protection Act ("TCPA"). The FCC issued its ruling on July 10, from which three appeals are currently pending, one in the Seventh Circuit and two in the D.C. Circuit. Now before the Court is Performant's motion to continue the stay pending the outcome of those appeals. This motion is granted.

The FCC ruled, as relevant here, that the TCPA's use of the term "capacity" in the definition of "automatic telephone dialing system," *47 U.S.C. § 227(a)(1),* does not exempt equipment that lacks the "present ability" to dial randomly or sequentially. July 10, 2015 FCC Declaratory Ruling and Order, ¶ 15. "In other words, the capacity of an autodialer is not limited to its current configuration but also [*2] includes its potential functionalities." *Id.* at ¶ 16.

The FCC also considered the issue of calls to reassigned telephone numbers. In this context, the FCC found that the statutory term "called party" refers to the "subscriber, *i.e.,* the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan." *Id.* at ¶ 73. The FCC did, however, create a very limited safe harbor for "callers who make calls without knowledge of reassignment and with a reasonable basis to believe they have valid consent to make the call." *Id.* at ¶ 72. Such callers "should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber. If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such." *Id.* Subject to this exception, "calls to reassigned wireless numbers violate the TCPA when a previous subscriber, not the current subscriber or customary user, provided the prior express consent on which the call is based." [*3] *Id.* at ¶ 73.

The Court's initial decision to stay this case was based upon the primary jurisdiction doctrine, which "allows a federal court to refer a matter extending beyond the 'conventional experience of judges' or 'falling within the realm of administrative discretion' to an administrative agency with more specialized experience, expertise,

Case 2:16-cv-14485-AJT-RSW   ECF No. 5   filed 01/26/17   PageID.71   Page 57 of 65

2015 U.S. Dist. LEXIS 142303, *                                      Page 2

and insight.'" *Arsberry v. Ill., 244 F.3d 558, 563 (7th Cir. 2001).* Now that the FCC has ruled, Performant appeals to the Court's general power to manage its docket in the normal course of resolving cases. This power is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co., 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936).*

Performant pins its hopes on the expectation that the appellate courts, particularly the Seventh Circuit, will overrule the FCC. This seems unlikely on the number reassignment/safe harbor issue. The FCC split 3-2 on this issue, but the FCC majority expressly agreed with the Seventh Circuit that "the TCPA nowhere indicates that caller intent is relevant to the definition of 'called party.'" FCC Ruling at ¶ 78 (citing *Soppet v. Enhanced Recovery Co., LLC, 679 F.3d 637, 639-40 (7th Cir. 2012)).* Put another way, the Seventh Circuit has already held that "[c]onsent to call a given number [*4] must come from its current subscriber," *Soppet at 641,* and three of the five FCC Commissioners generally agree with that conclusion, subject to the limited safe harbor discussed herein.

That said, a contrary result seems more likely on the capacity issue. As explained by one of the dissenting Commissioners:

The *Order* dramatically expands the TCPA's reach. The TCPA prohibits a person from making 'any call' to a mobile phone 'using any automatic telephone dialing system,' except in certain defined circumstances. The statute defines an 'automatic telephone dialing system' as 'equipment which has the capacity -- (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers. As three separate petitions explain, trial lawyers have sought to apply this prohibition to equipment that *cannot* store or produce telephone numbers to be called using a random or sequential number generator and that *cannot* dial such numbers.

*That position is flatly inconsistent with the TCPA.* The statute lays out two things that an automatic telephone dialing system must be able to do or, to use the statutory term, must have the 'capacity' to do. If a piece [*5] of equipment *cannot* do those two things -- if it *cannot* store or produce telephone numbers to be called

using a random or sequential number generator and if it *cannot* dial such numbers -- then how can it possibly meet the statutory definition? It cannot. To use an analogy, does a one-gallon bucket have the capacity to hold two gallons of water? Of course not.

Dissenting Statement of Commissioner Ajit Pai. The other dissenting Commissioner further expounded that it "seems obvious that the equipment must have the capacity to function as an autodialer *when the call is made* not at some undefined future point in time. ... Not so according to the order. Equipment that could conceivably function as an autodialer *in the future* counts as an autodialer *today.*" Statement of Commissioner Michael O'Rielly Dissenting In Part and Approving In Part.[1]

1   Commissioner O'Rielly continued, colorfully: "Indeed, the new definition is so expansive that the FCC has to use a rotary phone as an example of a technology that would not be covered because the modifications needed to make it an autodialer would be too extensive. That is like the FAA regulating vehicles because with enough modifications cars and trucks could [*6] fly, and then using a skateboard as an example of a vehicle that does not meet the definition."

Thus, it seems to the Court, as it seemed to the dissenting Commissioners, that the FCC majority's interpretation of the term "capacity" contradicts the plain language of the statute. If so, then the FCC's ruling on this issue is not entitled to deference on appeal. *See, e.g., Qwest Comm'n Int'l, Inc. v. F.C.C., 398 F.3d 1222, 1230 (10th Cir. 2005)* ("If Congress has spoken, our inquiry ceases; the agency, as well as the court, must give effect to Congress's unambiguously expressed intent") (citing *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, 467 U.S. 837, 842-43, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984)).* Finally, and most importantly, if the Seventh Circuit were to rule that "capacity" means "present capacity" in accordance with the plain language of the statute, such a ruling would be dispositive of the instant case because it is undisputed that Performant's telephony system did not and does not have the capacity to randomly or sequentially call phone numbers. Therefore, the Court finds that a stay pending the outcome of the appeals from the FCC's July 10 Declaratory Ruling and Order is in the interest of judicial economy.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT** Performant's motion to continue the stay [ECF No. 65] is **GRANTED.** Not later than [*7] **180 days** following the

2015 U.S. Dist. LEXIS 142303, *

date of this Order, the parties are directed to file a joint status report advising the Court of the status of the appellate proceedings discussed herein.

Dated at Milwaukee, Wisconsin, this 20th day of October, 2015.

BY THE COURT:

/s/ Rudolph T. Randa

HON. RUDOLPH T. RANDA

U.S. District Judge



ASFIKE KOLLOUKIAN, on behalf of herself and those similarly situated, Plaintiff, v. UBER TECHNOLOGIES, INC., Defendant.

Case No. CV 15-2856-PSG-JEM

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

*2015 U.S. Dist. LEXIS 174005*

December 14, 2015, Decided
December 14, 2015, Filed

**PRIOR HISTORY:** *Kolloukian v. Uber Techs., Inc., 2015 U.S. Dist. LEXIS 178703 (C.D. Cal., Aug. 28, 2015)*

**COUNSEL:** [*1] For Uber Technologies, Inc., Defendant: Donald J. Kula (Bar No. 144342), PERKINS COIE LLP, Los Angeles, California; James G. Snell (Bar No. 173070), Joshua A. Reiten (Bar No. 238985), PERKINS COIE LLP, San Francisco, California; Debra R. Bernard, pro hac vice, PERKINS COIE LLP, Chicago, IL.

**JUDGES:** HONORABLE PHILIP S. GUTIERREZ, United States District Judge.

**OPINION BY:** PHILIP S. GUTIERREZ

**OPINION**

ORDER GRANTING DEFENDANT'S MOTION TO STAY PROCEEDINGS PENDING APPEAL OF THE FCC'S OMNIBUS ORDER TO THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA AND *SPOKEO V. ROBINS*

Having fully considered all relevant documents, authorities, and evidence presented by Plaintiff Asfike Kolloukian and Defendant Uber Technologies, Inc., the Court concludes that staying this litigation pending a decision from the United States Supreme Court in *Spokeo v. Robins, 135 S. Ct. 1892, 191 L. Ed. 2d 762 (2015)*, and from the United States Court of Appeals for the District of Columbia in *ACA Int'l v. Fed. Commc'ns Comm'n*, No. 15-1211 (D.C. Cir. filed July 10, 2015)

(and consolidated cases), is warranted by the facts and circumstances of this case and the issues raised in the pending appeals.

Specifically, the Court finds that a stay will conserve the Court's and the parties' resources by simplifying [*2] the issues in question, streamlining the resolution of substantive issues, and reducing the burden on the parties and the Court. A stay will not create any undue prejudice to Plaintiff and the modest delay caused by the granted stay is reasonable in light of the implications the appellate decisions may have on this litigation.

For these reasons, IT IS HEREBY ORDERED that:

1. Defendant's Motion To Stay Proceedings is GRANTED.

2. This action is stayed until the United States Court Of Appeals for the District of Columbia issues a decision in *ACA Int'l v. Fed. Commc'ns Comm'n*, No. 15-1211 (D.C. Cir. filed July 10, 2015) (petition for review) (and consolidated cases), and the United States Supreme Court issues a decision in *Spokeo v. Robins, 135 S. Ct. 1892, 191 L. Ed. 2d 762 (2015)*.

The case is administratively closed and may be reopened by application at by any party.

IT IS SO ORDERED.

Dated: 12/14/15

/s/ PHILIP S. GUTIERREZ

THE HONORABLE PHILIP S. GUTIERREZ

United States District Judge



ALETHA K. MACKIEWICZ, Plaintiff, v. NATIONSTAR MORTGAGE, LLC, Defendant.

Case No: 6:15-CV-465-Orl-18GJK

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA, ORLANDO DIVISION

*2015 U.S. Dist. LEXIS 180770*

November 10, 2015, Decided
November 10, 2015, Filed

**COUNSEL:** [*1] For Aletha K. Mackiewicz, Plaintiff: George Michael Gingo, James E. Orth, Jr., LEAD ATTORNEY, Gingo & Orth, Titusville, FL.

For Nationstar Mortgage, LLC, Defendant: Clarence Harold Houston, III, LEAD ATTORNEY, Emily Yandle Rottmann, Sara F. Holladay-Tobias, McGuireWoods, LLP, Jacksonville, FL.

**JUDGES:** G. KENDALL SHARP, SENIOR UNITED STATES DISTRICT JUDGE.

**OPINION BY:** G. KENDALL SHARP

**OPINION**

**ORDER**

This cause comes for consideration on Defendant Nationstar Mortgage, LLC's ("Nationstar") Motion to Stay Proceedings Pending Ruling By United States Circuit Court of Appeals for the District of Columbia and the Supreme Court (the "Motion") (Doc. 27). Plaintiff Aletha Mackiewicz responded in opposition (Doc. 29). Nationstar contends that "two important legal issues that may be dispositive of this case" are currently pending before the United States Court of Appeals for the District of Columbia and the United States Supreme Court, and asks the Court to stay these proceedings until those cases are decided. (Doc. 27 at 1.)

A district court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket ... [and] calls for the exercise of judgment, which must [*2] weigh competing interests and maintain an even balance." *Landis v. North Am. Co., 299 U.S. 248,254-55, 57 S. Ct. 163, 81 L. Ed. 153 (1936)*. In the Middle District of Florida, courts consider several factors when evaluating a request for a stay, including prejudice to the non-moving party, whether the requested stay would simplify and clarify the issues, and whether the potential stay would reduce the burden of litigation on the parties and on the court. *See, e.g., Freedom Sci., Inc. v. Enhanced Vision Sys., No. 8:11-CIV-1194-T-17-AEP, 2012 U.S. Dist. LEXIS 11410, at *2 (M.D. Fla. Jan. 31, 2012)*.

Here, the Court finds that a stay is warranted. Mackiewicz does not argue that a stay would prejudice her in any non-trivial way, and the Court cannot conceive of any significant prejudicial effects that would result from a stay order. Furthermore, a stay would assist the Court in simplifying and clarifying the law to be applied and issues to be decided. Mackiewicz concedes as much in her response when she observes that at least one count of the Complaint implicates a core issue involved in the *Spokeo* case currently before the Supreme Court--whether *Article III* standing may be conferred upon a plaintiff who suffers no concrete harm. (Doc. 29 at 5.) Further guidance on this issue and the *ACA International* question before the D.C. Circuit--the proper scope of the phrase [*3] "automatic telephone dialing system" within the Telephone Consumer Protection Act--would allow the Court to render a more certain, correct, and clear decision. Finally, a stay would reduce the burden of litigation on the parties and the Court by allowing the Court to avoid issuing a dispositive Order in the midst of an uncertain legal environment.

2015 U.S. Dist. LEXIS 180770, *

Accordingly, it is hereby **ORDERED AND AD-JUDGED:**

   1. Defendant Nationstar Mortgage, LLC's Motion to Stay Proceedings Pending Ruling By United States Circuit Court of Appeals for the District of Columbia and the Supreme Court (the "Motion") (Doc. 27), is hereby **GRANTED**.

   2. This action is stayed pending the Supreme Court's decision in *Spokeo, Inc. v. Robins,* and the United States Court of Appeals for the District of Columbia Circuit's decision in *ACA International*.

   3. Defendant Nationstar Mortgage, LLC, is **ORDERED** to file a status report every **ninety (90) days** commencing from the date of this Order.

**DONE AND ORDERED** at Orlando, Florida, this 10 day of November, 2015.

/s/ G. Kendall Sharp

G. KENDALL SHARP

SENIOR UNITED STATES DISTRICT JUDGE



1 of 6 DOCUMENTS

**TAURICE RICKS, Plaintiff, vs. ALLIED INTERSTATE, LLC; and SYNCHRONY FINANCIAL, Defendants.**

**Case No. 3:16-cv-00205-HES-PDB**

**UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA, JACKSONVILLE DIVISION**

*2016 U.S. Dist. LEXIS 118956*

**July 11, 2016, Decided**
**July 11, 2016, Filed**

**COUNSEL:** [*1] For Taurice Ricks, Plaintiff: Frank H. Kerney, III, LEAD ATTORNEY, Morgan & Morgan, PA, Tampa, FL.

For Allied Interstate, LLC, Defendant: Patrick G. Broderick, LEAD ATTORNEY, Greenberg Traurig, LLP, West Palm Beach, FL; John Aaron Wirthlin, Greenberg Traurig, P.A., Tampa, FL.

For Synchrony Financial, Defendant: Jessica B. Reyes, LEAD ATTORNEY, Liebler, Gonzalez & Portuondo, PA, Miami, FL.

**JUDGES:** HARVEY E. SCHLESINGER, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** HARVEY E. SCHLESINGER

**OPINION**

**ORDER**

This matter is before the Court on Defendant Synchrony Bank's[1] ("Synchrony") "Motion to Stay Proceedings Pending Ruling by the Supreme Court and the D.C. Circuit Court of Appeals" ("Motion") (Dkt. 15, filed May 2, 2016); and Plaintiff's ("Ricks") "Response" in opposition thereto (Dkt. 17, filed May 3, 2016).

> 1   Synchrony Bank alleges that it has been improperly named in this matter as Synchrony Financial. (Dkt. 15, at 1).

**I. Factual and Procedural Background**

Ricks alleges that Synchrony used an automatic telephone dialing system ("ATDS") or an artificial or pre-recorded voice to place telephone calls to Ricks' cellular telephone. Ricks claims that he expressly revoked any prior express consent he may have given for Synchrony to contact [*2] him. Ricks alleges that after expressly revoking his consent, he continued to receive prerecorded messages and automatically-dialed calls to his cellular telephone. Ricks filed his Amended Complaint on March 4, 2016 which alleged, in Count IV, violations of the *Telephone Consumer Protection Act ("TCPA")*. (Dkt. 3, filed Mar. 4, 2016); *47 U.S.C. § 227, et seq.* Since that time, Synchrony has filed the current Motion before this Court seeking a stay pending the Circuit Court of Appeals for the District of Columbia's decision in *ACA International v. Federal Communications Commission* and the Supreme Court of the United States' decision in *Spokeo v. Robins*. (Dkt. 15, filed May 2, 2016).

**II. Standard of Review**

A district court has discretionary power to stay proceedings. *Landis v. N. Am. Co., 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936)*. In rare circumstances a litigant in one cause may "be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id. at 255.* The party requesting stay "bears the burden of establishing its need." *Clinton v. Jones, 520 U.S. 681, 708, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997)* (citing *Landis, 299 U.S. at 255*). "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for

itself, for counsel, and [*3] for litigants." *Landis, 299 U.S. at 254.*

## III. Analysis

### A. Spokeo

*Spokeo* was decided by the Supreme Court of the United States on May 16, 2016. *Spokeo v. Robins*, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016). Accordingly, Synchrony's Motion on the point is moot.

### B. ACA International

Synchrony argues that the requested stay will be short in duration and will not prejudice Ricks. Synchrony additionally argues that it will suffer unnecessary litigation fees and expenses if a stay is not imposed and that granting a stay will streamline the proceedings by simplifying the issues and promoting judicial economy.

*ACA International* involves a challenge to the FCC's interpretation of the term "automatic telephone dialing system" and whether the FCC has expanded that definition beyond Congress' intent. (Dkt. 15, ex. A). Thus, the decision in *ACA International* may be outcome-determinative to this case because it may determine whether Synchrony was using an ATDS, a necessary element of the causes of action in Ricks' Amended Complaint. Synchrony notes several federal court decisions, including decisions from the Middle District of Florida, that have granted stays in light of the pending *ACA International* appeal. *See Shahin v. Synchrony Fin., et al., Case No. 8:15-cv-02941-MSS-EAJ, 2016 U.S. Dist. LEXIS 119260 (M.D. Fla. Apr. 12, 2016)*; [*4] *Chattanond v. Discover Fin. Servs., LLC, 2016 U.S. Dist. LEXIS 24700, 2016 BL 59996, 3 (C.D. Cal. Feb. 26, 2016)*; *Abplanalp v. United Collection Bureau, Inc., No. 3:15-cv-203-RJC-DCK, 2016 U.S. Dist. LEXIS 1762, 2016 WL 81498, at *2-3 (W.D.N.C. Jan. 7, 2016)*; *Acton v. Intellectual Capital Mgmt., No. 15-cv-4004(JS)(ARL), 2015 U.S. Dist. LEXIS 172149 (E.D.N.Y. Dec. 28, 2015)*; *Fontes v. Time Warner Cable, Inc., Case No. CV14-2060-CAS(CWx), 2015 U.S. Dist. LEXIS 169580 (C.D. Cal. Dec. 17, 2015)*; *Mackiewicz v. Nationstar Mortg., LLC, Case No. 6:15-cv-00465, 2015 U.S. Dist. LEXIS 180770 (M.D. Fla. Nov. 10, 2015)*; *Gensel v.*

*Performant Techs., Inc., No. 13-cv-1196, 2015 U.S. Dist. LEXIS 142303, 2015 WL 6158072 (E.D. Wis. Oct. 21, 2015).*

*ACA International* has been fully briefed and accordingly granting the current Motion will likely not result in a lengthy stay. Furthermore, this case is in the early stages of litigation and granting a stay will not likely result in prejudice to Ricks. In addition, this Court agrees with Synchrony that denial of the Motion could lead to unnecessary fees and expenses depending on the outcome in *ACA International*. Thus, granting the Motion will conserve Ricks', Synchrony's, and this Court's resources.

Accordingly, it is hereby **ORDERED**:

1. Synchrony's Motion to Stay Proceedings Pending Ruling by the Supreme Court and the D.C. Circuit Court of Appeals (Dkt. 15) is **DENIED IN PART AND GRANTED IN PART**;

2. This case is stayed pending the [*5] Circuit Court of Appeals for the District of Columbia's ruling in *ACA International v. Federal Communications Commission*, No. 15-1211 (D.C. Cir. filed May 2, 2016);

3. The Clerk is **DIRECTED** to administratively close this case;

4. The Parties are **DIRECTED** that, within fourteen (14) days of the decision in *ACA International*, they shall notify the Court of the ruling in that case, file a motion to reopen this case if necessary, file a motion to reinstate any terminated motion if necessary, and inform the Court whether and to what extent the ruling has affected their respective positions in this case; and

5. The Parties are **DIRECTED** to file a notice with this Court every sixty (60) days on the status of these proceedings.

**DONE AND ENTERED** at Jacksonville, Florida, this 11th day of July, 2016.

/s/ Harvey E. Schlesinger

**HARVEY E. SCHLESINGER**

UNITED STATES DISTRICT JUDGE



GHASSAN SHAHIN and JAROSLAVA SHAHIN, Plaintiffs, v. SYNCHRONY FINANCIAL, ALLIED INTERSTATE LLC, and CAVALRY SPV I, LLC, Defendants.

Case No: 8:15-cv-2941-T-35EAJ

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION

*2016 U.S. Dist. LEXIS 119260*

April 12, 2016, Decided
April 12, 2016, Filed

COUNSEL: [*1] For Ghassan Shahin, Jaroslava Shahin, Plaintiffs: Christopher W.E. Boss, LEAD ATTORNEY, Boss Law PLLC, St Petersburg, FL.

For Synchrony Financial, Allied Interstate LLC, Cavalry SPV I, LLC, Defendants: Jessica B. Reyes, LEAD ATTORNEY, Liebler, Gonzalez & Portuondo, PA, Miami, FL.

JUDGES: MARY S. SCRIVEN, UNITED STATES DISTRICT JUDGE.

OPINION BY: MARY S. SCRIVEN

OPINION

ORDER

THIS CAUSE comes before the Court for consideration of Defendants' Motion to Stay. (Dkt. 19) In this action, Plaintiffs allege that Defendants violated federal and state consumer protection laws, including the *Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, et seq.*, by, *inter alia*, using an automatic telephone dialing system or an artificial or prerecorded voice to place telephone calls to their cellular telephones without their consent. Defendants request that this case be stayed pending the outcome of two appellate cases: the United States Supreme Court's forthcoming decision in Spokeo, Inc. v. Robins, Case No. 13-1339, and the Circuit Court of Appeals for the District of Columbia's ruling in ACA International v. Federal Communications Commission, Case No. 15-1211.

A district court has the inherent discretionary authority to stay litigation pending the outcome [*2] of a related proceeding in another forum. *CTI-Container Leasing Corp. v. Uiterwyk Corp., 685 F.2d 1284, 1288 (11th Cir. 1982)*. The Court's power to stay is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co., 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936)*; see also *Gov't of the Virgin Islands v. Neadle, 861 F. Supp. 1054, 1055 (M.D. Fla. 1994)* ("A district court has discretion to stay an action which duplicates one pending in another federal ... court.").

ACA International involves a challenge to the FCC's interpretation of the term "automatic telephone dialing system" and whether the FCC has expanded that definition beyond Congress' intent. (Dkt. 19 at 17-18) Spokeo will resolve a conflict between the circuit courts over "[w]hether Congress may confer *Article III* standing upon a plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke the jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute." Pet. for Writ of *Certiorari* in *Spokeo, Inc. v. Robins, No. 13-1339, 2014 U.S. S. Ct. Briefs LEXIS 1766, 2014 WL 1802228, at *i (U.S. May 1, 2014)*. In their Amended Complaint, Plaintiffs allege that Defendants used an automatic telephone dialing system to place calls to their cellular phones. They do not allege that they have suffered any actual harm, and appear to rely solely on the fact [*3] that Defendants violated the TCPA.

Thus, the Court believes that the rulings in ACA International and Spokeo may be outcome-determinative to this case. It notes that numerous other district courts have stayed TCPA cases in light of the pending appellate cases. *See, e.g., Tel. Science Corp. v. Hilton Grand Vacations Co., LLC*, No. 6:15-cv-969-Orl-41DAB, 2015 U.S. Dist. LEXIS 159479, 2015 WL 7444409, at *3 (M.D. Fla. Nov. 20, 2015); *Mackiewicz v. Nationstar Mortgage LLC*, No. 6:15-CV-465-Orl-18GJK, 2015 U.S. Dist. LEXIS 180770 (M.D. Fla. November 10, 2015); *Duchene v. Westlake Servs., LLC*, No. 2:13-CV-01577, 2015 U.S. Dist. LEXIS 139269, 2015 WL 5947669, at *1 (W.D. Pa. Oct. 13, 2015); *Abante Rooter and Plumbing v. OH Insurance Agency*, No. 1:15-CV-09025 (N.D. Ill. November 17, 2015); *Eric B. Fromer Chiropractic, Inc. v. New York Life Ins. & Annuity Corp.*, No. 2:15-CV-04767-AB-JC, 2015 U.S. Dist. LEXIS 148476, 2015 WL 6579779, at *2 (C.D. Cal. Oct. 19, 2015); *Salvatore v. Microbilt Corp.*, No. 4:14-CV-01848-YK-MCC, 2015 U.S. Dist. LEXIS 110025, 2015 WL 5008856 (M.D. Pa. Aug. 20, 2015); *Hillson v. Kelly Servs., Inc.*, No. 2:15-CV-10803-LJM-APP, 2015 U.S. Dist. LEXIS 97958, 2015 WL 4488493 (E.D. Mich. July 15, 2015); *Ramirez v. Trans Union, LLC*, No. 12-CV-00632-JSC, 2015 U.S. Dist. LEXIS 80692, 2015 WL 6159942 (N.D. Cal. June 22, 2015); *Larson v. Trans Union, LLC*, No. 12-CV-05726-WHO, 2015 U.S. Dist. LEXIS 83459, 2015 WL 3945052 (N.D. Cal. June 26, 2015); *Syed v. M-I LLC*, No. 1:14-CV-00742-WBS-BAM, 2015 U.S. Dist. LEXIS 173150, 2015 WL 3630310 (E.D. Cal. May 29, 2015) (stipulation of the parties); *Williams v. Elephant Ins. Co.*, No. 1:15-CV-00119-GBL-TCB, 2015 U.S. Dist. LEXIS 78051, 2015 WL 3631691 (E.D. Va. May 27, 2015).

Furthermore, a review of the record suggests that the Parties will not be prejudiced by a stay. This case is in the early stages of litigation and in all likelihood, the stay will not be lengthy. [*4]  ACA International has been fully briefed, and Spokeo will be decided during the Supreme Court's current term, which means a decision in that case should be rendered within the next three months. A stay will conserve both the Parties' and judicial resources and will help clarify any issues that remain for resolution.

Upon consideration of the foregoing, it is hereby ORDERED as follows:

1. Defendants' Motion to Stay (Dkt. 19) is GRANTED. The case is STAYED pending the Supreme Court's decision in Spokeo, Inc. v. Robins and the Circuit Court of Appeals for the District of Columbia's ruling in ACA International v. Federal Communications Commission.

2. The Parties are DIRECTED that, within fourteen (14) days of the latter of the decisions in Spokeo and ACA International, they shall notify the Court of the ruling in that case, file a motion to reopen this case if necessary, file a motion to reinstate any terminated motion if necessary, and inform the Court whether and to what extent the rulings in those cases have affected their respective positions in this case.

3. The Clerk is DIRECTED to TERMINATE any pending motions in this case.

4. The Clerk is DIRECTED to ADMINISTRATIVELY CLOSE this case. [*5]

DONE and ORDERED in Tampa, Florida, on this 12th day of April, 2016.

/s/ Mary S. Scriven

MARY S. SCRIVEN

UNITED STATES DISTRICT JUDGE